**Jessie Lane HITCHCOCK, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–02–00202–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted June 20, 2003.

Decided Sept. 19, 2003.

Rehearing Overruled Oct. 15, 2003.

---

**5.** The subject of appeal in cause number 06–02–00145–CR, 109 S.W.3d 80 (Tex.App.-Texarkana 2003).

Jeff Harrelson, Dowd, Harrelson, Moore & Giles, Texarkana, for appellant.

Kristian Young, Asst. Dist. Atty., for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice JOSH R. MORRISS, III.

While patrolling a Riverplace Apartments parking lot in Hooks, Texas, around 1:30 a.m. on October 21, 2001, officers noticed three people sitting in a parked car with the lights out. Having earlier received reports of suspicious activity in the area, the officers decided to investigate. One of the officers, David Gipson, approached the car and knocked on the front passenger's side window. When the window was lowered, Gipson detected smoke and the burning smell of marihuana. He asked the occupants to step out of the vehicle and, when they complied, the backseat passenger fled. Gipson's partner pursued the man, leaving Gipson with the two front-seat passengers, Jessie Lane Hitchcock and a female.

Preceding his search of the vehicle, Gipson handcuffed Hitchcock and placed him, along with the female passenger, in the back seat of his patrol car. During his search, Gipson discovered marihuana residue in the ashtray and a bottle of cognac under the passenger's seat. Following his search, Gipson removed Hitchcock and the other passenger from the patrol car and began searching them based on his findings in the car. Given the strong odor of marihuana in the car, Gipson believed he had probable cause to search Hitchcock and the remaining passenger for illegal drugs. Gipson performed a pat-down search for weapons and then reached into Hitchcock's pockets. After recovering from Hitchcock's left front pants pocket a gum wrapper with a white, rock-like substance inside, which he believed to be crack cocaine, Gipson arrested Hitchcock for possession of a controlled substance.

After pleading guilty to possession of a controlled substance, Hitchcock was sentenced to two years in state jail (probated for five years) and assessed a $750.00 fine. On appeal, Hitchcock contends the trial court erred in denying his motion to suppress, alleging law enforcement officials violated his constitutional and statutory rights against unreasonable search and seizure.

Analysis

 The Fourth Amendment to the United States Constitution protects the right to be free of unreasonable searches and seizures. U.S. CONST. amend. IV; *United States v. Place,* 462 U.S. 696, 700, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Article I, Section 9 of the Texas Constitution similarly provides that people "shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation." TEX. CONST. art. I, § 9. In a hearing on a motion to suppress evidence, a defendant bears the initial burden of proof to demonstrate that the search and seizure occurred without a warrant. *Bishop v. State,* 85 S.W.3d 819, 821 (Tex.Crim.App.2002). Once the defendant demonstrates that a warrantless search occurred, the burden then shifts to the State to prove a warrant existed or an exception, under either the Fourth Amendment to the United States Constitution or Article I, Section 9 of the Texas Constitution, justifies the warrantless search given the totality of the circumstances. *State v. Steelman,* 93 S.W.3d 102, 106 n. 5 (Tex.Crim.App.2002); *Bishop,* 85 S.W.3d at 822. If clear and convincing proof is not offered before the trial court, then the illegally obtained evidence may not be admitted at trial. *See State v. Ibarra,* 953 S.W.2d 242, 245 (Tex.Crim. App.1997). In the case at bar, the parties agree a warrantless search occurred; therefore, the State must meet the burden of proving that an exception to the Fourth Amendment justified the search of Hitchcock's person.

A. Initial Detention

 An officer may conduct a brief investigative detention, or *Terry* stop, if he or she "has reasonable suspicion to believe that an individual is involved in criminal activity." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Balentine v. State,* 71 S.W.3d 763, 768 (Tex. Crim.App.2002). Given the totality of the circumstances as distinguished from the facts in *Steelman,* it is reasonable to conclude—and Hitchcock concedes-that Gipson articulated facts sufficient to support a reasonable suspicion that Hitchcock and the remaining front-seat passenger were engaged in criminal activity. *Cf. Balentine,* 71 S.W.3d at 768–69 (finding, under totality of circumstances, officer had reasonable suspicion to stop suspect).

B. *Terry* Search

 A police officer may conduct a pat-down search of a suspect's outer clothing, even in the absence of probable cause, if the officer reasonably believes that the suspect is armed and dangerous to the officer or to others in the area. *Terry,* 392 U.S. at 27, 29, 88 S.Ct. 1868; *Carmouche v. State,* 10 S.W.3d 323, 329 (Tex.Crim. App.2000). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence...." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *see also Carmouche,* 10 S.W.3d at 329 (citing *Wood v. State,* 515 S.W.2d 300, 306 (Tex.Crim. App.1974)). "The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person would justifiably believe that he or others were in danger." *Balentine,* 71 S.W.3d at 769 (citing *O'Hara v. State,* 27 S.W.3d 548, 551 (Tex.Crim.App.2000)).

Here, the officer testified he performed a *Terry* search to make sure there were no weapons. Given that the search occurred in the early hours of the morning, in an area about which officers had received re-

ports of suspicious activity, and that one of the occupants of Hitchcock's car had fled the scene only moments earlier, it is not unreasonable that a prudent person would find Gipson's initial pat-down search of Hitchcock's outer clothing justified. The more significant issue is whether Gipson's search of Hitchcock's pants pocket was justified.

### C. Search of the Pocket

 If a search goes beyond what is necessary to determine whether the suspect is armed, then the fruits of that search are illegal and must be suppressed. *Carmouche*, 10 S.W.3d at 330 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). One exception, however, is when, during a lawful pat-down search, an officer feels an object "whose contour or mass makes its identity immediately apparent." *Dickerson*, 508 U.S. at 375, 113 S.Ct. 2130. In such cases, "no additional privacy interest is implicated by the seizure of an item whose identity is already plainly known through the officer's sense of touch." *Carmouche*, 10 S.W.3d at 330 (citing *Dickerson*, 508 U.S. at 377, 113 S.Ct. 2130). Hitchcock correctly contends, however, that because Gipson admitted he did not feel the gum wrapper containing the cocaine through Hitchcock's pants pocket during the initial pat-down search for weapons, the plain feel exception to the Fourth Amendment could not justify the officer's more invasive search.

Although the facts in this case suggest that this exception does not apply, the State presents two alternative arguments to justify the search: (1) inevitable discovery and (2) exigent circumstances.

### 1. Inevitable Discovery

 The State contends the federal rule of inevitable discovery applies in this case because Hitchcock's motion to sup-

press was based solely on a violation of his Fourth Amendment rights. The record, however, does not support the State's contention. In his motion to suppress, Hitchcock claimed the actions of the police violated his constitutional and statutory rights under (1) the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (2) Article I, Section 9 of the Texas Constitution; and (3) Article 38.23 of the Texas Code of Criminal Procedure. Hitchcock's motion clearly includes claims that the search violated both federal and state law. Hitchcock did not affirmatively waive his challenge under the Texas Constitution at the pretrial hearing, and he again asserted his rights thereunder in his brief to this Court. In addition, Hitchcock's counsel did not waive the Texas law claim by not directly referencing the Texas Constitution in his closing argument.

 "The inevitable discovery doctrine renders the exclusionary rule inapplicable to otherwise suppressible evidence if said evidence would have been inevitably discovered by lawful means." *Henderson v. State*, 82 S.W.3d 750, 753 n. 3 (Tex.App.-Corpus Christi 2002, pet. ref'd) (citing *United States v. Grosenheider*, 200 F.3d 321, 328 n. 8 (5th Cir.2000)). A majority of the Texas Court of Criminal Appeals has held that the inevitable discovery doctrine violates Article 38.23 of the Texas Code of Criminal Procedure (also known as the Texas exclusionary rule). *State v. Daugherty*, 931 S.W.2d 268, 271–73 (Tex.Crim. App.1996); *see also Roquemore v. State*, 60 S.W.3d 862, 871 n. 12 (Tex.Crim.App. 2001) (noting that the Texas exclusionary rule does not contain the inevitable discovery exception). In *Daugherty*, the court reasoned that the decision of whether evidence has been illegally obtained is a separate consideration from whether the Texas exclusionary rule should apply. *Daugher-*

*ty,* 931 S.W.2d at 272. The *Daugherty* court criticized its dissenters for believing that evidence "obtained in violation of" the law is admissible unless the Fourth Amendment's exclusionary rule would operate to exclude it. *Id.* at 272–73. Evidence that might be admissible under an exception to the Fourth Amendment, such as inevitable discovery, might nonetheless be inadmissible under Texas' stricter exclusionary rule. *Id.*

In 2002, the Fourteenth Court of Appeals rejected a claim by the State that the fruits of an illegal search were nonetheless admissible because the State had secured a search warrant. *Price v. State,* 93 S.W.3d 358 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). Without specifically invoking the term "inevitable discovery," the State argued that a "casual connection" between the evidence sought to be suppressed and the allegedly illegal entry was too tenuous to support suppression because the officers had a valid search warrant. *Id.* at 370. Such a warrant, though legally obtained, was executed in violation of the Fourth Amendment, and its execution was directly connected with the illegal entry and confiscation of the contraband. *Id.* at 371. Because there was no independent, subsequent search pursuant to a valid warrant, the court of appeals held the trial court erred by denying Price's motion to suppress under the theory that inevitable discovery would have cured the illegal search. *Id.* at 372.

In the present case, Gipson testified he searched Hitchcock and seized the cocaine *before* placing Hitchcock under arrest. Because there is no evidence in the record that might attenuate the connection between the discovery and the prearrest, invasive search, the State's claim of inevitable discovery pursuant to a search incident to arrest is unpersuasive.

### 2. Exigent Circumstances

The State's final argument is that Gipson was justified in conducting the more invasive search because either Hitchcock or the front-seat passenger could destroy any illegal narcotics still in their possession during the time it would take police to obtain a warrant. "[T]he law is well settled in this jurisdiction that when an officer has probable cause to believe that an offense is being committed in his presence ... he has the right to take reasonable measures to insure that the incriminating evidence is not destroyed and that reasonable physical contact is one of these measures." *Hernandez v. State,* 548 S.W.2d 904, 905 (Tex.Crim.App.1977) (citations omitted); *see also Lewis v. State,* 56 S.W.3d 617, 623 (Tex.App.-Texarkana 2001, no pet.) (noting community's interest in preserving evidence is considerable; police justified in use of gastric lavage without first obtaining warrant).

Gipson testified that he believed the occupants of the car had been smoking marihuana based on the smoke and strong odor of marihuana emitted from the car's window. When Gipson's subsequent search of the car produced alcohol but no usable quantity of drugs, he reasonably deduced that Hitchcock and the female passenger might have concealed marihuana on their persons. "Law enforcement officers are permitted to draw logical inferences and make intelligent deductions based on a totality of the circumstances." *Small v. State,* 977 S.W.2d 771, 774 (Tex. App.-Fort Worth 1998, no pet.) (citing *Jackson v. State,* 745 S.W.2d 4, 10 (Tex. Crim.App.1988)).

In light of the totality of the circumstances in this case, it is clear Gipson had probable cause to believe that any evidence of drugs on Hitchcock's person could have been destroyed during the time it would have taken to obtain a search

warrant. *Cf. Small,* 977 S.W.2d at 774 (explaining that circumstances making procurement of warrant impractical include need to prevent imminent destruction, removal, or concealment of property intended to be seized). Not only is the odor of marihuana sufficient to constitute probable cause to search a defendant's person, *Ross v. State,* 486 S.W.2d 327, 328 (Tex.Crim. App.1972); *Small,* 977 S.W.2d at 774; *Hernandez v. State,* 867 S.W.2d 900, 907 (Tex.App.-Texarkana 1993, no pet.), but also the need for preservation of evidence was considerable, and the physical intrusion experienced by Hitchcock was minimal. There was no error in denying Hitchcock's motion to suppress.

We affirm the judgment of the trial court.