# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00133-CR

**Delmar Lee Parker, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. CR20703, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Delmar Lee Parker guilty of possession of less than one gram of cocaine. Finding that Parker had two previous final convictions, the jury assessed punishment at twenty years in prison and a $10,000 fine. Parker contends that the district court erred by denying his motion to suppress evidence seized pursuant to what he describes as an illegal stop, search, and seizure. He was stopped based on a description of a person reported to have stolen a drill from a lumber company. Parker contends that the police lacked reasonable suspicion to stop him because he did not match the description of the shoplifter given by the lumber company. He argues that the patdown search illegally exceeded the scope of a frisk for a weapon, and that the item seized was not readily identifiable as contraband from a legal patdown search. We will affirm the conviction.

**BACKGROUND**

Because Parker challenges only the admission of the cocaine into evidence, we will limit our review of the record primarily to the testimony produced at the hearing on Parker's motion to suppress. Three witnesses testified at the hearing: the lumber company employee who reported the theft and the two police officers who conducted the stop, search, and seizure.

David Bolivar, the lumber-company employee, reported to police the theft of a cordless drill. Bolivar testified that he described the shoplifter to police as a thin black male about six feet tall, wearing black pants and a black windbreaker with blue and white stripes. He testified that the shoplifter rode away on a bicycle. Bolivar testified that police very shortly thereafter returned with a man Bolivar identified as the person who took the drill. At the hearing, he identified Parker as the person who took the drill.

Cameron Police Officer Chris Stringer testified that, while patrolling in his police vehicle, he was told of the theft complaint. Stringer testified that the offender was described as "a black male, approximately 6 foot, slender build, blue jacket white stripes, dark colored jeans, left on a bicycle." Stringer drove his patrol car to the area toward which the offender was reported to have ridden, and saw someone matching the description riding a bicycle. The person was Parker.

Stringer testified that he had known Parker for about four years. In response to Stringer's question, Parker confirmed that he had come from the lumber company. Stringer testified that Parker was sweating and had shaky hands; Parker appeared nervous and seemed to be trying to keep his distance from Stringer. Stringer testified that Parker had a reputation for resisting and running from law enforcement, and was known to carry knives or razor blades; Stringer also testified that people sometimes hide weapons around their ankles. Stringer handcuffed Parker and proceeded

2

to pat him down. Stringer felt a small bulge—at most two inches square—near Parker's ankle, after which Parker "kicked his leg away and was trying to keep the leg away from me." Stringer testified that Parker's movement prevented him from feeling the bulge very long. Stringer testified that, because of the suspicion that Parker was fleeing the theft and was resisting the search, he thought that the bulge might be either a weapon or contraband.

After Stringer and his fellow officer, Wesley Male, restrained Parker, Male took over the search. Stringer testified that Parker "kept pulling his leg away frequently, and just in my experience in law enforcement, any time someone tries to . . . keep . . . pulling [a]way in a certain area of the body, it has been my experience that they're hiding something, and I asked [Male] to retrieve it out of [Parker's] sock."

Male's testimony about his observations of Parker's reputation and actions concurred with those in Stringer's testimony. Male agreed that Parker had a reputation for evading and resisting police. He also testified that Parker was known to carry weapons such as knives, box cutters, and broken pieces of antennas that were sharp enough to stab someone.

Male testified that, as he helped Stringer restrain and control Parker, Stringer brought his attention to the bulge in Parker's sock. Male testified that, as soon as he felt the bulge, "I called it. I said it. . . . The defendant said it's just my money wrap—money there, and I said yeah. It's with crack wrapped up in it." Male testified that he had felt a rock of cocaine under a sock or clothing a few times—five, ten, or maybe more times, although he could not give a precise number; he said it was enough times to let him identify the bulge in Parker's sock. At trial, Male testified that the bulge in Parker's sock proved to be a rock of crack cocaine wrapped in a dollar bill.

3

**DISCUSSION**

When reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review, giving "almost total deference to a trial court's determination of historical facts" and reviewing de novo the court's application of the law of search and seizure. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Because the district court made no express findings of historical fact, we assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion, and review the evidence in a light most favorable to the trial court's ruling. *See id*. at 327-28.

**The stop**

By his first issue, Parker contends that the cocaine should have been suppressed because the search was consequent to an illegal stop. A peace officer is "generally justified in briefly detaining an individual on less than probable cause for the purposes of investigating possibly-criminal behavior where the officer can 'point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *Id*. at 328 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)); *see also Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) ("Texas courts require reasonable suspicion before a seizure of the person or property can occur"). The information provoking the officer's suspicions need not be based on his own personal observations, but may be based on a tip that has sufficient indicia of reliability to justify a stop. *Carmouche*, 10 S.W.3d at 328. While *Carmouche* involved an anonymous tip, *see id*., the information in this case was provided by a known, named person. We must take into account the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981).

4

To support a warrantless stop, the State must present evidence of the description given in the tip so that the court can determine if the description, coupled with the defendant's appearance, could have provoked reasonable suspicion that the defendant was the person described; an officer's assertion that the defendant matched the description is inadequate if the officer cannot also testify as to the description. *Rance v. State*, 815 S.W.2d 633, 635-36 (Tex. Crim. App. 1991) ("*Rance I*") (discussing warrantless arrest). If the arresting officer is unable at trial to recall the description given, and the unchallenged evidence shows that the defendant did not resemble the offender described, the district court must suppress the evidence garnered by an arrest based on the initial description. *See Rance v. State*, 828 S.W.2d 283, 284 (Tex. App.—Houston [14th Dist.] 1992, no pet.) ("*Rance II*") (on remand after *Rance I*). In that case, the arresting officer vaguely recalled that the offenders were described as black, male, tall, and slim. *Rance I*, 815 S.W.2d at 634. A police report stated that the offenders were described as 15 and 17 years old, both five feet six inches tall, with one wearing white pants and no shirt, the other blue jeans and a white tee shirt. *Id*. The officer could not remember at trial what the defendant was wearing when arrested, but the officer admitted that the defendant looked older than fifteen, was about six feet tall, and was wearing clothes in court (which were allegedly the clothes he wore at the time of arrest) that did not match the descriptions offenders in the offense report. *Id*. On remand, the court of appeals suppressed evidence garnered pursuant to the arrest. *Rance II*, 828 S.W.2d at 284.

Parker argues that the descriptions provided by the lumber company employee and Stringer were too different in the details about the offender's clothing to justify the stop. He concedes that the race, height, and build were the same, but argues that such similarities are not

enough to support the stop, citing *Aguirre v. State*, 7 S.W.2d 76, 76-77 (Tex. Crim. App. 1928) (ethnicity alone is insufficient description of person in warrant).

We conclude that the stop was justified. First, we note that the descriptors in clear agreement exceed race or ethnicity. In addition to matching race, the descriptions match gender, height, build, mode of transportation, and location. The discrepancies are slight: Bolivar described the shoplifter's pants as black and the windbreaker as black with blue and white stripes, while Stringer recalled "dark colored" jeans and a blue jacket with white stripes. Considering the totality of the circumstances, these descriptions are sufficiently similar to support stopping Parker. We overrule his first issue.

**The search**

Parker challenges the search on two grounds asserting that police exceeded the scope of a permissible, warrantless search under these circumstances. He contends that the search illegally exceeds the scope of a frisk for a weapon, and that the seizure of the cocaine was not justified because the item in his sock was not readily apparent to be contraband during the "first" plain feel.

When a person is stopped based on suspicious conduct, the officer may conduct a patdown search of the person for weapons when the officer is justified in believing that the person may be armed and dangerous. *See Terry*, 392 U.S. at 23-24. If, while lawfully conducting such a search, the officer feels "an object whose contour or mass makes its identity [as contraband] immediately apparent . . . its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). But this "plain feel" exception does not authorize officers to squeeze, slide, and otherwise

6

manipulate the contents of a defendant's pocket—particularly if the officer already knows the pocket does not contain a weapon. *Id*. at 378. If the search exceeds that necessary to determine if the suspect is armed, the fruits of the search will be suppressed. *See id.* at 379; *see also Sibron v. New York*, 392 U.S. 40, 65-66, 68 (1968).

Stringer testified that he conducted the search for his safety. Parker matched the description of a person reportedly fleeing a theft, appeared nervous, seemed to be trying to stay away from Stringer, had a reputation for fleeing and evading arrest, and was known to carry knives and razor blades. Under these circumstances, Stringer's concern for his safety was reasonable and justified the initial patdown search. We overrule Parker's second issue.

By his third issue, Parker contends that the seizure of the cocaine was not justified because the item in his sock was not readily apparent to be contraband during the "first" plain feel. He characterizes Male's patdown search of his ankle as unlawful and not a search for weapons. He relies on *Hitchcock v. State*, a case in which an officer completed a patdown search for weapons, then reached into the defendant's pants pockets and found a gum wrapper that contained cocaine. *See* 118 S.W.3d 844, 847 (Tex. App.—Texarkana 2003, pet. ref'd). In that case, the officer testified that he did not notice the gum wrapper during his initial patdown of the defendant's pants; accordingly, the court held that the legal reasoning supporting the conduct of a patdown search for weapons did not support the officer reaching into the suspect's pants pockets. *Id*. at 849.[1]

---

[1] Ultimately, the Texarkana court did not suppress the evidence seized, finding the search of Hitchcock's pockets justified by exigent circumstances. *Hitchcock v. State*, 118 S.W.3d 844, 850-51 (Tex. App.—Texarkana 2003, pet. ref'd).

7

This case is distinct from *Hitchcock* because Male discovered the cocaine pursuant to the patdown for weapons. The evidence shows that, while conducting a lawful patdown search, Stringer saw a bulge in Parker's sock and felt something, but Parker prevented him from feeling the sock bulge for long by kicking his leg away. Stringer testified that the fleeting feel, plus the circumstances, his experience with Parker and knowledge of Parker's reputation, and Parker's resistance, made him believe that the item might be a razor blade. He instructed Male to continue the search while he restrained Parker. Rather than being a second search as in *Hitchcock*, Male's search was a completion of the patdown search for weapons. Male testified that he recognized the item as a rock of cocaine as soon as he felt it. The search was therefore not invalidated by the extensive manipulations discussed in *Dickerson*, 508 U.S. at 378. We overrule Parker's third issue.

**CONCLUSION**

Having overruled Parker's issues on appeal, we conclude that the court did not err by denying his motion to suppress. We affirm the judgment.

---

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: August 4, 2005

Do Not Publish

8