

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

### No. 06-07-00181-CR

_____

ERIC DEWAYNE MATHIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 35513-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Eric Dewayne Mathis appeals his conviction for possession of a controlled substance, alleging his detention and search were improper and therefore the trial court erred in denying his motion to suppress the evidence. We affirm the judgment of the trial court.

## I.    Factual and Procedural Background

While responding to a report of a disturbance with several other officers, Officer Kirk Rhodes observed a green Honda that appeared to be driven at an unsafe speed in a residential area. Rhodes signaled with his hands and his flashlight for the driver to slow down. Either interpreting Rhodes' signals as a request to stop or for some other reason, the driver stopped the vehicle on the side of the road. When Rhodes approached the vehicle, he detected the distinctive odor of marihuana. Rhodes requested the driver, Mathis, to exit the vehicle, ordering him to "keep his hands up where [Rhodes] could see them." As Mathis exited the vehicle, he reached "for the front of his pants or around his pockets." Believing Mathis might have a weapon or was attempting to conceal something, Rhodes conducted a search of Mathis. During the search, another officer observed Mathis drop something. A bag containing cocaine was discovered near Mathis' feet. After the trial court denied Mathis' motion to suppress, Mathis pled guilty to possession of a controlled substance and signed a stipulation of the evidence. The trial court found Mathis guilty and sentenced him to seven years' imprisonment.

## II.    Reasonableness of the Detention

Mathis' first argument is that the stop was unreasonable. According to Mathis, Officer Rhodes lacked probable cause or reasonable suspicion to detain Mathis because there was no "objective basis" for the officer's conclusion that Mathis was speeding. Mathis argues there is no evidence Rhodes clocked Mathis' speed with a radar gun and the State failed to introduce any evidence that Rhodes had specialized training that would allow him to evaluate the speed of a vehicle without the use of radar. The State responds that the stop was a consensual encounter or, in the alternative, Rhodes had specific, articulable facts to justify the detention.

### A.    Standard of Review

We review the trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that depend on credibility, but review de novo the trial court's application of the law. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, we review de novo determinations of probable cause or reasonable suspicion after granting deference to the trial court's determination of historical facts. *Guzman*, 955 S.W.2d at 87.

3

The defendant alleging a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). "A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant." *Id.* The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances. *Id.* at 672–73.

The first step in our analysis is to determine the nature of the interaction between Officer Rhodes and Mathis. "[N]ot all seizures of the person must be justified by probable cause to arrest for a crime." *Florida v. Royer*, 460 U.S. 491, 498 (1983). The parties do not agree concerning how we should characterize the interaction. Mathis argues the interaction was an arrest or, alternatively, a temporary detention. The State argues the interaction was an encounter or, alternatively, a temporary detention.

## B.     Detention Was Not an Arrest

Mathis impliedly argues the interaction was an arrest.[1] An individual is arrested when he or she has been actually placed under restraint or taken into custody. TEX. CODE CRIM. PROC. ANN. art.

---

[1]Mathis argues "[n]o reasonable person would have felt he was free to leave in these circumstances" and that the officer lacked probable cause to stop Mathis. Because these standards are pertinent to arrests, we presume Mathis is arguing the original interaction was an arrest. We note, in Texas, a police officer must promptly release a person accused of speeding from custody if the person executes a written promise to appear in court. TEX. TRANSP. CODE ANN. §§ 543.004, 543.005 (Vernon Supp. 2007). *But see Virginia v. Moore*, No. 06-1082, 2008 U.S. LEXIS 3674 (U.S. Apr. 23, 2008).

15.22 (Vernon 2005). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). At least four general situations may constitute custody: 1) the suspect is physically deprived of his or her freedom of action in any significant way, 2) a law enforcement officer tells the suspect that he or she cannot leave, 3) law enforcement officers create a situation that would lead a reasonable person to believe that his or her freedom of movement has been significantly restricted, and 4) there is probable cause to arrest and law enforcement officers do not tell the suspect that he or she is free to leave. *Id.* at 255. At the time of the stop, Mathis had not been physically restrained and had not been told he was under arrest. The record does not support a conclusion that, under the circumstances, a reasonable person would believe that his or her freedom of movement was restrained to the degree associated with a formal arrest. There is no evidence the officer's knowledge of probable cause was manifested to the suspect. The stop was not an arrest.

### C. An Encounter

The State claims the interaction was an encounter which does not require reasonable suspicion. Not every interaction between police and citizens implicates the Fourth Amendment. The law authorizes a police officer to stop and ask questions of a citizen. These encounters are consensual as long as the person would feel free to go about his or her business. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); *California v. Hodari D.*, 499 U.S. 621 (1991). Even when officers have no basis to suspect an

5

individual, they may ask questions of that individual, ask to examine that person's identification, and request to search such person's luggage, so long as the police do not by their actions actually inform the person that compliance with their requests is required. *Bostick*, 501 U.S. at 434–35; *Hunter*, 955 S.W.2d at 104.

A seizure of the person occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Bostick*, 501 U.S. at 434. Rhodes testified he did not intend for his signal to be interpreted as a command to stop and, when the car stopped, he believed the driver "wanted to speak to [him]." The State argues Mathis could have rolled up his window and continued driving. Rhodes testified he signaled with his hands and his flashlight for the car to slow down. While conceding it was possible a person would interpret the signal as an indication he wanted the individual to stop, Rhodes claimed the signal was a common signal meaning to slow down. Rhodes agreed a "conscientious person who wants to be sure he doesn't disobey an order" might interpret his signals as a command to stop. Even if the initial police intervention is considered an investigative detention, we believe such a detention was proper.

**D.**     ***Terry* Detention**

We believe the interaction is best characterized as an investigative detention. "A routine traffic stop resembles an investigative detention." *State v. Cardenas*, 36 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). The United States Supreme Court in *Terry v. Ohio* established the test for investigative detentions. *Terry* established a two-pronged test for investigative detentions. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). To determine the reasonableness

6

of an investigative detention, the court must inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); *see Terry*, 392 U.S. at 19–20.

"Under the first prong, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Davis*, 947 S.W.2d at 242 (quoting *Terry*, 392 U.S. at 21). The specific, articulable facts, along with rational inferences from those facts, must allow the officer to reasonably conclude the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 10 (1989). The second prong of *Terry* requires the scope of the detention to be "like any other search, . . . strictly circumscribed by the exigencies which justify its initiation." *Davis*, 947 S.W.2d at 243 (quoting *Terry*, 392 U.S. at 25). The officer must diligently pursue a means of investigation that lasts no longer than is necessary and should be the "least intrusive means reasonably available." *Id.* at 245. Mathis only challenges the first prong of the test.

A law enforcement officer may lawfully stop and detain a person for a traffic violation committed in the presence of the officer. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). "The offense of speeding requires, in general, proof that the vehicle's speed was not reasonable and prudent." *Tollett v. State*, 219 S.W.3d 593, 598 (Tex. App.—Texarkana 2007, pet. ref'd). Section 545.351 of the Texas Transportation Code provides: "[a]n operator may not drive at a speed greater than is

7

reasonable and prudent under the circumstances then existing." TEX. TRANSP. CODE ANN. § 545.351(a), (b) (Vernon 1999). A posted speed limit is merely "prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful." TEX. TRANSP. CODE ANN. § 545.352 (Vernon Supp. 2007); *see also* TEX. TRANSP. CODE ANN. §§ 545.353, 545.355, 545.356 (Vernon Supp. 2007).

The El Paso Court of Appeals has concluded an investigative detention for speeding may be reasonable even in the absence of a measurement of the speed by radar. *Heredia v. State*, No. 08-06-00011-CR, 2007 Tex. App. LEXIS 4638 (Tex. App.—El Paso June 14, 2007, no pet.) (mem. op., not designated for publication) (estimated speed with police car's speedometer). Although Rhodes did not use the words "reasonable and prudent," a reasonable deduction from his testimony would be that the speed was not reasonable or prudent. Rhodes testified the car "appeared to be traveling above the speed limit" and the speed "presented a danger" to several police officers and juveniles near the road.

Even though there is no evidence Mathis' speed was measured with radar, Rhodes had reasonable suspicion that Mathis' speed was not reasonable and prudent. The trial court did not err in determining the original detention of Mathis' vehicle for the traffic offense of speeding was reasonable.

### III. Probable Cause to Search

Mathis also argues the evidence should have been suppressed because Rhodes lacked probable cause to search Mathis. We note that the cocaine was found by Mathis' feet. As such, the

8

cocaine may have been abandoned. There is no seizure under the Fourth Amendment if the defendant "intended to abandon the property and his decision to abandon it was not due to police misconduct." *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997). Mathis appears to argue that the abandonment of the substance was occasioned by the search. We will assume, without deciding, that whether the officer had probable cause to search Mathis' person is relevant to whether there was a seizure under the Fourth Amendment. Because the facts are not developed sufficiently, we will also assume the search did not constitute a pat-down search.[2]

In determining probable cause, we must consider the totality of the circumstances. *Angulo v. State*, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987). Although probable cause requires more than mere suspicion, it requires far less evidence than is needed to support a conviction or even a finding by a preponderance of the evidence. *Middleton v. State*, 125 S.W.3d 450, 459 (Tex. Crim. App. 2003). Probable cause exists where officers have reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed. *McGee v. State*, 105

---

[2]The State characterizes the search as a "weapons frisk" or "pat-down" search. Rhodes testified he asked Mathis to exit the car for a "preliminary weapons frisk." Throughout the rest of the hearing, Rhodes described the search merely as a "search." The record does not contain any details concerning how the search was conducted or how intensive the search was. We note "[l]aw enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect is armed and dangerous." *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000). Because the State had the burden to show the warrantless search was reasonable, we will assume—in the absence of a sufficient record—the search exceeded the scope permitted by a "pat-down" or "frisk" search for weapons.

S.W.3d 609, 614 (Tex. Crim. App. 2003); *see Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005).

Mathis argues, if the odor of marihuana has any relevance to probable cause, it merely provides probable cause to search the automobile. We have recently held the odor of marihuana is an important factor in determining whether an officer had probable cause to search an automobile. *See Martin v. State*, No. 06-07-00104-CR, 2008 Tex. App. LEXIS 2167 (Tex. App.—Texarkana Mar. 27, 2008, no pet.) (mem. op., not designated for publication); *see also Parker v. State*, 206 S.W.3d 593, 599 (Tex. Crim. App. 2006); *Moulden v. State*, 576 S.W.2d 817, 819–20 (Tex. Crim. App. [Panel Op.] 1978). However, the odor, under the facts of this case, is also an important factor in determining whether the officer had probable cause to search Mathis' person. Rhodes specifically testified that the odor of marihuana was coming from both Mathis and the car. This Court has held the odor of marihuana, under the appropriate circumstances, can be sufficient to constitute probable cause to search a defendant's person. *See Hitchcock v. State*, 118 S.W.3d 844, 851 (Tex. App.—Texarkana 2003, pet. ref'd) (officer believed occupants of car had been smoking marihuana based on smoke and strong odor inside car); *see also Ross v. State*, 486 S.W.2d 327, 328 (Tex. Crim. App. 1972). In addition, Rhodes testified Mathis reached "for the front of his pants or around his pockets" after being ordered to "keep his hands up where [Rhodes] could see them." Rhodes concluded from this gesture that Mathis might have a weapon or was attempting to conceal something. Giving due deference to the trial court's determination of historical facts, we conclude

Rhodes had probable cause, under the circumstances of this case, to search Mathis' person. The trial court did not err in denying the motion to suppress.

For the reasons stated, we affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     May 14, 2008
Date Decided:       May 15, 2008

Do Not Publish