

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00079-CR

AMY DANNETTE JACKSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Red River County, Texas
Trial Court No. CR02147

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

The consensual search of Amy Dannette Jackson's person produced a "meth" pipe containing .09 grams of methamphetamine. After the trial court denied Jackson's motion to suppress the evidence, Jackson pled guilty to the offense of possession of less than one gram of methamphetamine.[1]

Jackson now appeals, urging in one point of error that the trial court erred in denying her motion to suppress the evidence obtained from a search of her person. Because the record demonstrates that Jackson voluntarily consented to the search, no abuse of discretion has been shown. Consequently, we affirm the trial court's judgment.

Initially, when trying to suppress evidence, a defendant has the burden to establish the lack of a warrant for the search that produced the evidence. *Bishop v. State*, 85 S.W.3d 819, 821 (Tex. Crim. App. 2002); *Hitchcock v. State*, 118 S.W.3d 844, 848 (Tex. App.—Texarkana 2003, pet. ref'd). Once it is established that there was no warrant, the burden shifts to the State to prove that an exception, under either the Fourth Amendment to the United States Constitution or Article I, Section 9, of the Texas Constitution, justified the warrantless search given the totality of the circumstances. *State v. Steelman*, 93 S.W.3d 102, 106 n.5 (Tex. Crim. App. 2002); *Bishop*, 85 S.W.3d at 822; *Hitchcock*, 118 S.W.3d at 848. If clear and convincing proof satisfying the State's burden is not offered before the trial court, then the evidence may not be admitted at trial. *See*

---

[1]Pursuant to the terms of her plea agreement with the State, Jackson was placed on deferred adjudication community supervision for four years, was ordered to complete 120 hours of community service, and was ordered to pay a $2,000.00 fine, a $50.00 Crime Stopper Fee, $180.00 in restitution, and $1,117.50 in court costs. The court costs include $712.50 in court-appointed attorney fees, which Jackson had agreed to pay as a term and condition of her deferred adjudication community supervision.

*State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997) (Mansfield, J., concurring); *Hitchcock*, 118 S.W.3d at 848. Here, the parties agree that the search in question was executed without a warrant. Consequently, the State was required to prove the existence of a valid exception.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing de novo other application-of-law-to-fact issues. *See Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Appellate courts should also afford nearly total deference to trial court rulings on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review "de novo the [trial] court's application of the law of search and seizure to those facts." *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). We must affirm the decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

The record in this case contains no findings of fact. When the trial court does not file findings of fact, we should assume that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Ross*, 32 S.W.3d at 855–56. The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez*

3

*v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

The arrest in this case was effected September 29, 2011, by Brandon Denison, a state trooper. At the suppression hearing, Denison testified that he had earlier encountered Jackson and her boyfriend, Jason Davidson, on the week of September 18, when he was dispatched to the scene of a possible crime after receiving "a call about some horses."[2] Denison found Davidson's vehicle on the scene and tried to approach Davidson and Jackson, who were standing outside of the vehicle with others. Davidson and Jackson fled from Denison, who was able to apprehend Jackson, but not Davidson. Denison testified that, in searching "the immediate area where . . . we believed they ran to," he located a Kool-aid or Gatorade bottle with tubing coming out of the lid, which tested positive for methamphetamine. However, because others were present on the scene, Denison was unable to verify who abandoned the bottle and chose not to arrest anyone. Sheridan Jones Norlin, a deputy with the Red River County Sheriff's Office, was also on the scene and testified that she knew Davidson because he "had been stopped and arrested multiple times for driving on an invalid license."

On September 29, 2011, Denison spotted Davidson driving his vehicle with Jackson riding as a passenger. Denison was aware that Davidson's license was suspended, but "ran him again just to verify that, and it was indeed still suspended." Following the confirmation, Denison stopped the Davidson vehicle. Davidson provided Denison with documentation purporting to show that his license had been reinstated. Denison instructed Davidson to exit the vehicle while he went

---

[2]Denison failed to explain whether the caller was reporting a crime.

back to his patrol car to again verify the status of Davidson's license. When the license suspension was again confirmed, Denison arrested Davidson and placed him in the back of his patrol car. Although Denison did not see or smell any contraband, he asked Davidson if there was anything illegal in the vehicle and received a negative response. Nevertheless, Davidson granted Denison consent to search his vehicle.

Denison initially testified that he asked Jackson to exit the vehicle so that he could conduct the search of Davidson's car, but clarified after reading his incident report that Jackson had already voluntarily exited the vehicle. Denison testified, "[J]ust from previous knowledge of [Jackson] and [Davidson], I knew that it was very possible that she had some narcotics on her." During his search of the vehicle, Denison found drugs "underneath the vehicle" and turned his attention toward Jackson, who stood outside the front of the vehicle.

As he approached Jackson, Denison testified that he noticed, below the front bumper close to where Jackson stood, a Gatorade cap with a tube running through it and assumed that the apparatus was paraphernalia. Denison testified that he asked for and obtained Jackson's consent to search her person. Denison waited "a few minutes" for female officer Norlin to arrive to conduct the search. Norlin testified that, in conducting the search of Jackson's person, she "struck something hard in [Jackson's] crotch area," and Jackson admitted that the item was a pipe used to smoke methamphetamine.[3] Jackson was arrested.

Jackson argues that the trial court erred in denying her motion to suppress because she was innocent of any traffic violation, the purpose of the stop was completed when Davidson was

---

[3]Laboratory testing confirmed that the pipe contained .09 grams of methamphetamine.

5

arrested, Denison did not have reasonable suspicion to conduct the search of her person, and Jackson's consent was the product of coercion. We conclude that Jackson has failed to show that the trial court abused its discretion in finding that her consent was voluntarily given.

"For the duration of a traffic stop . . . a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)); *see Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). Jackson does not argue that there was any illegality in Denison's decision to initiate a traffic stop or that Denison lacked probable cause to arrest Davidson.

After he was arrested, Davidson consented to the search of his vehicle. "Subject to a few well-delineated exceptions, under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued with probable cause is deemed per se unreasonable." *Flowers v. State*, 438 S.W.3d 96, 107 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "However, the grant of the consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause." *Id.*; *see Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011). Jackson did not specifically raise to the trial court any challenge to the legality of the search of Davidson's vehicle following his consent.[4]

---

[4]Moreover, a passenger generally has no standing to contest the search of a vehicle unless the search resulted from an infringement of her own Fourth Amendment rights. *See Tucker v. State*, 183 S.W.3d 501, 507 (Tex. App.—Fort Worth 2005, no pet.); *Trinh v. State*, 974 S.W.2d 872, 874 (Tex. App.—Houston [14th Dist.] 1998, no pet.). In the absence of any evidence showing that a passenger in a vehicle has a legitimate expectation of privacy in the vehicle or a possessory interest in the property seized, the passenger has no standing to contest the search of the vehicle. *Flores v. State*, 871 S.W.2d 714, 720 (Tex. Crim. App. 1993).

Denison found narcotics during the search of Davidson's vehicle. He also noticed the Gatorade bottle cap apparatus near Jackson, similar to the apparatus that previously tested positive for methamphetamine during his last encounter with Jackson. He then asked for Jackson's consent to search her person, and Jackson acquiesced. Although Denison did not have a warrant to search Jackson, her consent obviated the need for one, provided that it was voluntarily given. Jackson claims it was coerced.

"The voluntariness of a person's consent is also a question of fact that is determined by analyzing all of the circumstances of a particular situation." *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). "The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent search was voluntary or coerced." *Id.* Reasonableness is the "touchstone for determining voluntary consent to search." *Id.* We "review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen." *Id.* The ultimate question is whether Jackson's will was overborne and her capacity for self-determination critically impaired in a manner that rendered her consent involuntary. *Id.*

Jackson argues that her consent was involuntary because Denison never informed her that she had the right to refuse the search. However, "knowledge of a right to refuse is not a prerequisite of a voluntary consent." *Schneckloth*, 412 U.S. at 234. Aside from this claim, there was no argument during the suppression hearing that Jackson's consent was involuntary. Further, there is no evidence in the record that Denison mistreated or threatened Jackson, made any promise

7

intended to induce her consent, implied that compliance was necessary, or coerced Jackson's consent by any other means. Therefore, we find no abuse of discretion in the trial court's conclusion that Jackson's consent was voluntary.

Because a search of Jackson's person was justified by her voluntary consent, we find no abuse of discretion in the trial court's decision to overrule her motion to suppress.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     October 6, 2016
Date Decided:       October 13, 2016

Do Not Publish

8