

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00046-CR

_____

CHRISTOPHER MARCUS HATTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR16-028

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

A jury convicted Christopher Marcus Hatter of driving while intoxicated (DWI), third or more, and assessed a sentence of fourteen years' imprisonment. In his sole point of error on appeal, Hatter argues that the trial court erred in failing to grant his motion to suppress the evidence because there was no probable cause to arrest Hatter for DWI. We disagree and affirm the trial court's judgment.

## I. Standard of Review

"In a hearing on a motion to suppress evidence, a defendant bears the initial burden of proof to demonstrate that the search and seizure occurred without a warrant." *Hitchcock v. State*, 118 S.W.3d 844, 848 (Tex. App.—Texarkana 2003, pet. ref'd) (citing *Bishop v. State*, 85 S.W.3d 819, 821 (Tex. Crim. App. 2002)). Once the defendant demonstrates that a warrantless search occurred, the burden shifts to the State to prove that a warrant existed or that an exception, under either the Fourth Amendment to the United States Constitution or Article I, Section 9, of the Texas Constitution, justified the warrantless search given the totality of the circumstances. *State v. Steelman*, 93 S.W.3d 102, 106 n.5 (Tex. Crim. App. 2002); *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002); *Hitchcock*, 118 S.W.3d at 848. If clear and convincing proof satisfying the State's burden is not offered before the trial court, then the illegally obtained evidence may not be admitted at trial. *See State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997) (Mansfield, J., concurring); *Hitchcock*, 118 S.W.3d at 848. In the present case, the parties agree that the search in question was executed without a warrant. Consequently, the State was required to prove the existence of a valid exception to the Fourth Amendment.

2

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing de novo other application-of-law-to-fact issues. *See Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Appellate courts should also afford nearly total deference to trial court rulings on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts may review mixed questions of law and fact not falling within this category on a de novo basis. *Id*. We must affirm the decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

The record in this case contains no findings of fact. When the trial court does not file findings of fact, we should assume that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

## II.    The Suppression Hearing

Leslie Brian Thurston, a trooper for the Texas Department of Public Safety, testified that he was on his way home from his shift in his personal vehicle when he spotted a sports-utility

vehicle (SUV) driving on a four-lane road "at a very slow rate of speed, approximately 10 miles per hour." According to Thurston, the "vehicle was swerving severely. . . it was an extreme case." Thurston witnessed the SUV travel from the outside left lane, across the inside left lane and the turn lane, and then into oncoming traffic. He testified that the vehicle would speed up and then slow back down again to ten miles per hour and that this occurred several times.

Thurston passed the SUV when it nearly came to a stop in the middle of the road and noticed that the man driving the vehicle, later identified as Hatter, had a "a blank gazing stare . . . on his face" with a "drooped open" mouth. According to Thurston, Hatter drove through a stop sign without stopping and pulled into the driveway of a residence. After Thurston passed the driveway, Hatter pulled out and started driving in the opposite direction, away from Thurston. At that point, Thurston decided to stop Hatter for reckless driving and because he believed he might be intoxicated. He called dispatch to send a marked patrol unit to the scene.

Thurston testified that he continued to follow behind Hatter, who was then driving at sixty to seventy miles per hour and swerving severely. Thurston conducted the traffic stop before a marked unit could arrive. According to Thurston, Hatter stopped in the road, jumped out, threw his hands in the air, as if provoking physical confrontation, and started walking aggressively towards Thurston's truck.

Thurston testified that, when he first encountered Hatter, there was a strong smell of alcohol on his person and that he had exhibited a lack of coordination. When Thurston, who was wearing plain clothes, identified himself as a police officer by yelling, "Police, police" and showing him his badge and identification, Hatter got down to the ground. Thurston, who had left

4

his telephone in his car, went to retrieve it while instructing Hatter to remain on the ground. Hatter, who did not heed the warning, jumped back up, ran towards his car, and attempted to drive away before Thurston grabbed and restrained him.

Jarod Sears, a Sergeant with the Kilgore Police Department, arrived to find that Hatter had already been arrested by Thurston. According to Sears, Thurston said that Hatter was under arrest for DWI based on "driving extremely reckless." Sears testified that Hatter had red, glassy eyes, was belligerent, and had an open "40 ounce [bottle] of Bud Ice" in his car, with approximately ten ounces left in the bottle. Sears' dash-cam recording was introduced at the suppression hearing. According to Sears, when he asked Hatter to perform field sobriety tests, Hatter "stated he would just give blood." Sears testified that Hatter was transported to the "Kilgore Good Shepherd Hospital" for the blood draw.

## III.    Analysis

Hatter was arrested for DWI following a traffic stop for reckless driving. Because a routine traffic stop implicates the United States and Texas Constitutions, the traffic stop must be reasonable. *See Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984); *see also* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Bobo v. State*, 843 S.W.2d 572, 574 (Tex. Crim. App. 1992).

"To initiate an investigative stop, an officer must possess a reasonable suspicion based on specific, articulable facts that, in light of the officer's experience and general knowledge, would lead the officer to conclude reasonably that the person detained actually is, has been, or soon will be engaged in criminal activity." *Earl v. State*, 362 S.W.3d 801, 802–03 (Tex. App.—Texarkana 2012, pet. ref'd) (footnote omitted) (citing *United States v. Sokolow*, 490 U.S. 1, 10 (1989); *Garcia*

5

*v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "These facts must be more than a mere hunch or suspicion." *Id.* at 803 (citing *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)). "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014).

Hatter does not dispute that Thurston had reasonable suspicion to initiate the traffic stop. Here, Thurston's testimony established that he witnessed Hatter driving in a reckless manner in violation of Section 545.401 of the Texas Transportation Code. *See* TEX. TRANS. CODE ANN. § 545.401 (West 2011). "If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). Moreover, Thurston testified that he also suspected Hatter of DWI prior to the investigative stop due to his erratic driving, "blank gazing stare," and "drooped open" mouth.

Once Hatter was lawfully stopped, Thurston testified that he immediately smelled alcohol on his person. The smell of alcohol, coupled with Hatter's driving, lack of coordination, and belligerence, supplied the probable cause required to arrest Hatter for DWI. *See Washburn v. State*, 235 S.W.3d 346, 351 (Tex. App.—Texarkana 2007, no pet.). Accordingly, we conclude that the trial court properly denied Hatter's motion to suppress. We overrule Hatter's sole issue on appeal.

6

## II.     Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     August 28, 2017
Date Decided:      September 18, 2017

Do Not Publish