

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00212-CR

_____

TERRY EUGENE GLENN, SR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 12-0455X

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

OPINION

Terry Eugene Glenn, Sr., was convicted by a Harrison County jury of possession of a controlled substance in an amount less than one gram[1] and, after pleading "true" to two prior felony convictions, was sentenced to fifteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Glenn asserts that the trial court erred in denying his motion to suppress evidence obtained through a warrantless search and in admitting a pill bottle and cocaine because the State failed to establish a proper chain of custody as to this evidence. Because we find (1) that the record supports the trial court's denial of Glenn's motion to suppress and (2) that the trial court did not err in admitting the pill bottle and the cocaine, we affirm the judgment of the trial court.

I.      **There Was Probable Cause for the Warrantless Search**

In his first point of error, Glenn asserts that the trial court erred in denying his motion to suppress the cocaine because this evidence was seized without probable cause and without a search warrant in violation of his rights guaranteed under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; Article 1, Sections 9, 10, 13, and 19 of the Texas Constitution; and Articles 1.04, 1.06, and 38.23 of the Texas Code of Criminal Procedure. He argues that the officers detaining him[2] lacked both a search warrant and probable cause to search the pill bottle and that the plain-view doctrine did not justify the opening of the pill bottle and seizure of the contents—the cocaine. The State argues that the pill bottle was in plain view, which justified the

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(b) (West 2010).

[2]On appeal, Glenn does not contend that his detention was unlawful.

investigation of its contents, and that Glenn smelled of burnt marihuana, which gave the officers probable cause to search the contents of the pill bottle. The State also argues that Glenn failed to produce any evidence at the suppression hearing that there was no search warrant and that as a result, he failed to rebut the presumption that the police conduct was proper and failed to preserve anything for appellate review.[3] Finally, the State argues that Glenn failed to preserve any issue under the Fifth and Fourteenth Amendments to the United States Constitution, as well as any issue under the Texas Constitution or the Texas Code of Criminal Procedure, since at the suppression hearing he only argued that the search was illegal under the Fourth Amendment to the United States Constitution.

## A.    Glenn Preserved Only His Complaint Under the Fourth Amendment

A motion to suppress evidence is a specialized means of objecting to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). As such, a motion to suppress must meet the requirements of an objection. *Carroll v. State*, 911 S.W.2d 210, 218 (Tex. App.—Austin 1995, no pet.); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, no pet.). To preserve an issue involving the admission of evidence for appellate review, the objection must inform the trial court why, or on what basis, the evidence should be

---

[3]Although the State asserts that Glenn failed to preserve anything for our review, consideration of whether a defendant carried his initial burden of proof involves an analysis of the merits of the issue. In contrast, when a defendant fails to preserve an issue, we do not address the merits of the issue. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

excluded. *Ford*, 305 S.W.3d at 533 (citing *Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campell, J., concurring)).[4] In order to preserve his complaint for appeal,

> all a party has to do . . . is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). However, the objection must be sufficiently clear that opposing counsel and the trial court have an opportunity to address or correct the purported deficiency. *Ford*, 305 S.W.3d at 533. For this reason, "shotgun objections" generally citing many grounds for the objection without argument preserve nothing for appeal. *Johnson v. State*, 263 S.W.3d 287, 290 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd, untimely filed); *Webb v. State*, 899 S.W.2d 814, 818 (Tex. App.—Waco 1995, pet. ref'd). Likewise, a form motion to suppress asserting multiple grounds that are not subsequently asserted with argument during the suppression hearing does not preserve the subsequently unasserted grounds for appeal. *See Johnson*, 263 S.W.3d at 289–90; *Morgan v. State*, No. 05-94-01135-CR, 1996 WL 223551, at *4–5 (Tex. App.—Dallas Apr. 30, 1996, pet. ref'd) (not designated for publication).[5] Also, an issue on appeal that does not comport with the objection made at trial presents nothing for appellate review. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd).

---

[4]*See also* TEX. R. APP. P. 33.1(a)(1)(A) (error is preserved only when record shows that a "complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

[5]Although unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

In the trial court, Glenn filed a generic motion to suppress evidence alleging that "[t]he search of Defendant was in violation of Defendant's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, and those rights under Article 1, Section 9, of the Texas Constitution, and Article 38.23 of the Texas Rules of Criminal Procedure." The motion contained no allegations of fact or arguments supporting these alleged violations. Further, at the hearing on his motion to suppress, Glenn argued only that the evidence adduced at the hearing was obtained in violation of the Fourth Amendment. Therefore, he preserved only his Fourth Amendment complaint for our review. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (holding that defendant waived his trial objection under due course of law provision of Texas Constitution because he failed to present any argument to trial judge that due course of law provision provided greater protection than federal Due Process Clause).

### B.      Standard of Review

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion. *Vactor v. State*, 181 S.W.3d 461, 464 (Tex. App.—Texarkana 2005, pet. ref'd); *Carter v. State*, 150 S.W.3d 230, 235 (Tex. App.—Texarkana 2004, no pet.). We must affirm the trial court's ruling if it is correct under any theory of law applicable to the case. *Romero v. State*, 800 S.W.2d 539, 543–44 (Tex. Crim. App. 1990); *Shaw v. State*, 122 S.W.3d 358, 363 (Tex. App.—Texarkana 2003, no pet.). We use a bifurcated standard of review that gives "'almost total deference to a trial court's determination of the historical facts that the record supports[,] especially when the trial court's fact[-]findings are based on an evaluation of credibility and demeanor.'" *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.

5

Crim. App. 1997)). This same standard "'applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing.'" *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006)). We afford this "same level of deference to a trial court's ruling on 'application of law to fact questions,' or 'mixed questions of law and fact,' if the resolution of those questions turns on an evaluation of credibility and demeanor." *Id.* (citing *Montanez*, 195 S.W.3d at 106). However, those issues and questions that do not turn on credibility or demeanor are reviewed de novo. *Amador*, 221 S.W.3d at 673; *Vactor*, 181 S.W.3d at 464. Further, when a trial court does not make explicit findings of historical fact, we "'review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record.'" *Amador*, 221 S.W.3d at 673 (quoting *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)).

When a defendant alleges a Fourth Amendment[6] violation, he has the burden of producing evidence that rebuts the presumption that the police conduct was proper. *State v. Robinson*, 334 S.W.3d 776, 778–79 (Tex. Crim. App. 2011); *Amador*, 221 S.W.3d at 672. One means of meeting this burden is to show that a search or seizure occurred without a warrant. *Robinson*, 334 S.W.3d at 779; *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986), *abrogated on other grounds by Handy v. State*, 189 S.W.3d 296 (Tex. Crim. App. 2006). Only when the defendant meets his initial burden of proof does the burden shift "to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances." *Amador*, 221 S.W.3d at 672–73.

---

[6]*See* U.S. CONST. amend IV.

6

### C. Glenn Met His Initial Burden of Proof

In some cases, the State stipulates that the search or seizure was warrantless, thereby relieving the defendant of rebutting the presumption of proper police conduct. *See, e.g.*, *Robinson*, 334 S.W.3d at 779. Where there is no stipulation, as in this case, the defendant must produce some evidence that the search or seizure was warrantless. *See, e.g.*, *Russell*, 717 S.W.2d at 9–10. The State contends that this evidence must be affirmative, direct testimony that there was no search warrant.[7] While we note that producing affirmative, direct testimony is not particularly burdensome, nevertheless, the defendant is not required to produce direct evidence that there was no warrant.

In *Russell*, the defendant claimed the evidence of her guilt should have been suppressed since it was the product of an illegal arrest. *Id.* at 8. The Texas Court of Criminal Appeals set forth the entirety of the testimony relevant to the arrest in an Appendix, consisting of the examination of the arresting officer by the defendant's attorney. *Id.* at 9 n.3, 11–13. Nowhere in the examination did the attorney ask the officer whether he obtained or had an arrest warrant. Thus, there was no direct, affirmative testimony of the absence of a warrant. Nevertheless, after noting that the defendant "had the initial burden of proving that 1) a seizure occurred and 2) without a warrant," the Texas Court of Criminal Appeals stated that "[f]rom Officer Graves' testimony it is obvious that no warrant was obtained." *Id.* at 10. While not holding that circumstantial evidence would be sufficient in all cases, the court strongly intimated that we should

---

[7]The State suggests that the defendant must directly question the police officer about a warrant by asking whether there was a warrant and/or whether the challenged evidence was obtained as the result of a warrant.

7

not ignore testimony that leads to an obvious conclusion that no warrant was obtained. Further, the Texas Court of Criminal Appeals has indicated that a defendant can show the absence of a warrant with something less than direct evidence. In *Bishop v. State*, the trial court heard the defendant's suppression motion on affidavits only. *Bishop v. State*, 85 S.W.3d 819, 820 (Tex. Crim. App. 2002). The defendant failed to state that the search was performed without a warrant in her affidavit, but did claim that the search was warrantless in her unsworn motion to suppress. *Id.* at 821. The Texas Court of Criminal Appeals held that at least when the trial court bases its decision solely on affidavits, the court of appeals must consider the unsworn allegation of a warrantless search contained in the motion to suppress, as well as the affidavits, in addressing a Fourth Amendment complaint. *Id.* at 822.

Finally, at least two of our sister courts of appeals recognize that direct evidence is not required to show the absence of a search warrant. *See Richards v. State*, 150 S.W.3d 762, 767 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (en banc); *Gonzalez v. State*, No. 01-95-01571-CR, 1997 WL 149517, at *2 (Tex. App.—Houston [1st Dist.] Mar. 20, 1997, pet. ref'd) (not designated for publication). In *Richards*, the Fourteenth Court of Appeals re-examined its prior holding that direct, affirmative evidence was required to establish the absence of a warrant. Based on the Texas Court of Criminal Appeals' opinions in *Russell* and *Bishop*, the Houston Court of Appeals held that a defendant can meet his burden of showing a warrantless arrest with circumstantial evidence, overruling its prior cases to the extent they held to the contrary. *Richards*, 150 S.W.3d at 767, *overruling Telshow v. State*, 964 S.W.2d 303, 307 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *White v. State*, 871 S.W.2d 833, 836 (Tex. App.—Houston [14th Dist.] 1994,

8

no pet.); and *Highwarden v. State*, 846 S.W.2d 479, 481 & n.2 (Tex. App.—Houston [14th Dist.] 1993), *pet. dism'd, improvidently granted*, 871 S.W.2d 726 (Tex. Crim. App. 1994). In *Gonzalez*, the First Court of Appeals rejected the State's contention that the defendant had failed to meet his burden of showing a warrantless arrest by failing to ask the officer whether he executed an arrest warrant. *Gonzalez*, 1997 WL 149517, at *2. Rather, the court of appeals held that the officer's testimony that he stopped defendant's car based entirely on information given by a wrecker driver established that the officer did not arrest the defendant pursuant to a warrant. *Id.* The court also pointed out that the State called the first witnesses at the suppression hearing, indicating the defendant's initial burden of proof had been met.[8] *Id.*

Similarly, in this case, the circumstantial evidence demonstrates that the search of the pill bottle was performed without a search warrant. On cross-examination, Officer Jason Mobley, the arresting officer, testified,

> Q       [By Defense Counsel] And as soon as you go to Mr. Glenn and were helping him on the side of the road, you took the pill bottle and his identification from his hand; correct?
>
> A       I helped him up and took his ID and the pill bottle. That is correct.
>
> Q       You took both items from his hand and you did not ask to take the items; did you?

---

[8]We have found only two courts of appeals that have held that the defendant is required to produce affirmative evidence of the absence of a warrant before the burden of proof shifts to the State. *See Woollett v. State*, No. 08-99-00224-CR, 2000 WL 1060643, at *1 (Tex. App.—El Paso Aug. 3, 2000, pet. ref'd) (not designated for publication) (holding that without evidence affirmatively showing there was no warrant, burden does not shift to State and that "the absence of a warrant cannot be demonstrated by circumstantial testimony"); *Sims v. State*, 980 S.W.2d 538, 540 (Tex. App.—Beaumont 1998, no pet.) (holding defendant may not rely on circumstantial evidence to show arrest made without warrant). However, both of these decisions relied heavily on precedent from the Houston Fourteenth Court of Appeals. *See, e.g.*, *Telshow*, 964 S.W.2d at 307, *overruled by Richards*, 150 S.W.3d at 767. Significantly, the Fourteenth Court of Appeals overruled *Telshow* and other cases holding the absence of a warrant must be proved by direct evidence in *Richards*. *Richards*, 150 S.W.3d at 767.

A       No.

. . . .

Q       . . . . There was never a time where you asked Mr. Glenn if you could search inside of his pill bottle; correct?

A       That is correct.

Following this exchange between Glenn and Mobley, Glenn played an audio/video recording captured by the dash board camera (dash cam) in Mobley's patrol car. Although much of the interaction between Glenn and the officers was not captured by the video recording, the audio recording of the interaction is clear. Approximately one and one-half minutes after he exited his car to assist Glenn, Officer Mobley, Glenn, another officer, and a civilian can be seen on the recording passing in front of the car, walking slowly toward the curb. Mobley was obviously helping Glenn walk. Forty-five seconds later, the audio recording captured Mobley asking Glenn, "What you got in your hand right here?" Glenn responded, "Tobin's Valium prescription." Approximately thirty seconds later, one of the officers commented, "It's not his, it's not the right pill bottle." The video recording shows an officer opening the pill bottle on the hood of Mobley's patrol car less than twenty seconds later. Thus, less than one minute elapsed between the time the officers asked Glenn what was in his hand and the officers opening the pill bottle. After playing the dash-cam recording, Glenn continued his cross-examination of Mobley:

Q       What was that man doing on the hood of the vehicle of your --

A       That was Lieutenant John Johnson.

Q       What was he doing?

10

A      He opened the bottle.

Q      So he open [sic] it initially; correct?

A      Yes, sir.

. . . .

Q      Lieutenant John Johnson, not you, you did not open the pill bottle correct?

A      Correct.

Q      It was the other Officer that opened the pill bottle. . . . He opened the pill bottle and he didn't ask for consent; did he?

A      No.

Mobley's testimony, along with the dash-cam recording, establish that the search of the pill bottle was conducted without a warrant. Therefore, we find that Glenn met his initial burden of proof.

**D.      The Suppression Hearing**

The record of the suppression hearing shows that Mobley was responding to a call related to a disturbance at the intersection of U.S. Highway 59 and Interstate Highway 20 in Marshall, Texas. Mobley described the intersection as very heavily traveled, which was confirmed by the dash-cam recording. As Mobley approached the intersection, he saw a black male, whom he later identified as Glenn, lying in the middle of the intersection just south of the interstate bridge. He also saw two men attempting to drag Glenn out of the intersection.

Mobley testified that he was concerned that Glenn was impaired and that Glenn would get run over. After blocking part of the northbound traffic with his vehicle, Officer Mobley exited the vehicle to assist Glenn out of the roadway. He asked Glenn multiple times whether he was okay.

11

As he was talking to Glenn, Mobley smelled burnt marihuana on Glenn's clothes. He got Glenn to stand up, walked him to the curb, and sat him down. According to Mobley, Glenn, who was talking, was not making a lot of sense because he rambled and stumbled over his words. Mobley also testified that Glenn was unsteady on his feet. One of the men helping Glenn told Mobley that Glenn had a prescription and was taking Valium, and Glenn was clutching a pill bottle in his hand. In his other hand, Glenn had his driver's license, which allowed Mobley to identify him.

After Mobley assisted Glenn to the side of the road, he continued to ask him what had happened. Glenn talked variously about running for his life, breaking up with his girlfiend, and having worked undercover in Dallas. Mobley then asked him what was in his hand, to which Glenn replied that it was "Tobin's Valium prescription." After acquiring the pill bottle from Glenn, Mobley and Johnson determined that the label on the bottle indicated it was a prescription for diazepam, the generic name for Valium, belonging to James Tobin. Mobley testified that at that point, he was concerned that Glenn was in possession of a controlled substance. Johnson opened the bottle and discovered that it contained two plastic baggies and a white rock substance, which Mobley believed to be crack cocaine. At that time, the officers detained Glenn while Mobley performed a field test on the substance, which tested positive for cocaine. Glenn was then arrested for possession of a controlled substance.

### E. There Was Probable Cause for the Search

The Fourth Amendment to the United States Constitution protects persons against "unreasonable searches and seizures." U.S. CONST. amend IV. "In general, law enforcement personnel may not search or seize an individual absent a warrant based on probable cause." *Wright*

12

*v. State*, 7 S.W.3d 148, 150 (Tex. Crim. App. 1999). However, the United States Supreme Court has recognized several exceptions to the warrant requirement, including when an officer is acting within the community caretaking function of law enforcement. *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *Wright*, 7 S.W.3d at 151. Under this exception, an officer may stop and assist a person whom a reasonable person would believe is in need of help, considering the totality of the circumstances. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002); *Wright*, 7 S.W.3d at 151. It is clear from the evidence at the suppression hearing, and Glenn does not dispute, that the initial stop by Mobley fell within the community caretaking exception.[9] When Mobley first encountered Glenn, he was lying in the middle of a heavily traveled intersection, being dragged by two men, endangering his life as well as the lives of those attempting to assist him.

Nevertheless, Glenn argues that the subsequent search of the pill bottle was illegal. He argues that since the contents of the pill bottle were not in plain view, there was no probable cause for the search. The issue, he contends, is whether the officers had probable cause to arrest him before the search. Assuming, without deciding, that the plain-view exception[10] would not justify

---

[9]Under this exception, the officer must be primarily motivated by community caretaking concerns and must reasonably believe the defendant is in need of help based on

> four non-exclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and 4) to what extent the individual, if not assisted, presented a danger to himself or others.

*Corbin*, 85 S.W.3d at 277 (citing *Wright*, 7 S.W.3d at 152).

[10]The plain view exception allows the seizure of an object if (1) the officer is lawfully where the object is in plain view, (2) the incriminating character of the object is immediately apparent to the officer, and (3) the officer has a right to access the object. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009).

the search of the pill bottle, we find that the officers had probable cause to arrest Glenn before they searched the pill bottle.

Unless one of the exceptions applies, a warrantless search of a person is presumptively unreasonable. *Brimage v. State*, 918 S.W.2d 466, 500 (Tex. Crim. App. 1994) (plurality op.) (op. on reh'g); *Vactor*, 181 S.W.3d at 466; *Hitchcock v. State*, 118 S.W.3d 844, 848 (Tex. App.—Texarkana 2003, pet. ref'd). Probable cause justifying an arrest exists when "at that moment, facts and circumstances within the knowledge of the arresting officer, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person in believing that a particular person has committed or is committing a crime." *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999). If the officer has probable cause for an arrest, he may search the person as a search incident to an arrest. *See Vactor*, 181 S.W.3d at 467. Further, if the officer has probable cause to arrest before performing the search, whether the arrest occurs before or immediately after the search is irrelevant. *Ballard*, 987 S.W.2d at 892 (citing *Williams v. State* 726 S.W.2d 99, 101 (Tex. Crim. App. 1986) (citing *Rawlings v. Kentucky*, 448 U.S. 98 (1980))).

Often an encounter that begins as an attempt to render aid, or to determine if aid is needed, rapidly produces information that justifies a further investigation, search, and arrest. For instance, in *Wright*, the officer initially stopped an automobile to make sure its passenger, who was leaning out of the moving vehicle and vomiting, was not being assaulted or whether he needed medical attention. *Wright*, 7 S.W.3d at 150. As he approached the vehicle, the officer smelled marihuana and alcohol, then observed a partially smoked marihuana cigarette on the console. *Id.* The Texas Court of Criminal Appeals has held that the smell of marihuana, coupled with other circumstances,

14

can justify the warrantless entry into a residence to investigate. *Parker v. State*, 206 S.W.3d 593, 600 (Tex. Crim. App. 2006); *Estrada v. State*, 154 S.W.3d 604, 609–10 (Tex. Crim. App. 2005). In addition, the odor of marihuana provides probable cause to search a defendant's person. *Ross v. State*, 486 S.W.2d 327, 328 (Tex. Crim. App. 1972), *overruled on other grounds by Walter v. State*, 359 S.W.3d 212 (Tex. Crim. App. 2011); *Small v. State*, 977 S.W.2d 771, 774 (Tex. App.—Fort Worth 1998, no pet.); *Hitchcock*, 118 S.W.3d at 851; *Hernandez v. State*, 867 S.W.2d 900, 907 (Tex. App.—Texarkana 1993, no pet.). In this case, not only did Glenn smell of burnt marihuana, there were other facts and circumstances that would lead a reasonable person to believe Glenn had committed, or was committing, a crime.

The evidence at the suppression hearing showed that when first encountered, Glenn was lying in the middle of a busy intersection, unable to stand or walk without assistance. He was disoriented, mumbled, and stumbled over his words. When asked what had happened to him, he began rambling about different, seemingly unconnected topics, none of which explained his condition. As Mobley talked with Glenn, he noticed that his clothes smelled of burnt marihuana. Then, when asked about the pill bottle in his hand, Glenn admitted that it was someone else's diazepam prescription. As a controlled substance, it is illegal to possess diazepam without a valid prescription.[11] The search of the pill bottle occurred only after Glenn admitted that he was

---

[11]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.104(a)(2) (West Supp. 2014), § 481.117(a) (West 2010). Although Glenn argued at the suppression hearing that he was legally in possession of the prescription because he told the officers that he takes care of patients, as the trial court noted, although this might be relevant to his defense, it is not relevant to whether the officers had probable cause to search the bottle. *See Sandefer v. State*, Nos. 12-04-00013-CR, 12-04-00014-CR, 12-04-00015-CR, 12-04-00016-CR, 2005 WL 1903314, *3 (Tex. App.—Tyler Aug. 10, 2005, no pets.) (mem. op., not designated for publication) (holding that when determining whether probable cause to search existed at time of search, "the question of whether the defendant has a viable defense does not arise at this stage"); *see also Rangel v. State*, No. 11-10-00038-CR, 2012 WL 314058, at *3 (Tex. App.—Eastland Jan. 26, 2012, pet. ref'd)

knowingly in possession of diazepam without a valid prescription. Immediately upon discovering the contents, the officers detained Glenn, confirmed that the contents tested positive for cocaine, and arrested Glenn. Under these facts, the trial court reasonably could have concluded that the officers had probable cause to arrest Glenn for possession of a controlled substance and determined that the search was a valid search incident to an arrest. Therefore, we overrule this point of error.

## II. The Trial Court Did Not Err in Admitting the Pill Bottle and Cocaine

In his second point of error, Glenn asserts that the trial court erred in admitting the pill bottle and cocaine into evidence in the absence of a proper chain of custody. Glenn argues that Mobley made contradictory statements regarding what he did with the evidence and that there is a question surrounding his initial booking of Glenn for possession of a controlled substance weighing four grams to 200 grams. The State argues that the beginning and end of the chain of custody was proven, that there is no evidence of tampering or alteration, and that Mobley explained his booking error as a mistake. It also argues that while theoretical gaps in the chain of custody and evidence of a possibility of tampering or commingling may affect the weight of the evidence, they do not bar its admissibility. We agree.

"Proof of the beginning and end of a chain of custody will support the admission of the evidence in the absence of any evidence of tampering or alteration." *Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet. ref'd) (citing *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *disapproved of on other grounds by Leday v. State*, 983 S.W.2d 713 (Tex. Crim.

---

(mem. op., not designated for publication) (holding "[a] police officer need not anticipate a possible and apparently speculative defense that may be raised at trial when determining whether he has probable cause to arrest a person").

16

App. 1998); *Garcia v. State*, 537 S.W.2d 930, 934 (Tex. Crim. App. 1976); *Penley v. State*, 2 S.W.3d 534, 537 (Tex. App.—Texarkana 1999, pet. ref'd)). Without affirmative evidence of tampering or commingling, gaps in the chain of custody, whether real or theoretical, will not affect the admissibility of the evidence. *Id.*; *see Penley v. State*, 2 S.W.3d 534, 537 (Tex. App.—Texarkana 1999, pet. ref'd). Further, the defendant has the burden to produce affirmative evidence of tampering or commingling. *Dossett*, 216 S.W.3d at 17; *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *disapproved of on other grounds by Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998). While a showing of a possibility of tampering or commingling may affect the weight given to the evidence, it will not bar the admission of the evidence. *Dossett*, 216 S.W.3d at 17.

Glenn points to no affirmative proof of tampering, commingling, or alteration. Rather, he only states that a question is raised because Mobley originally booked him for possession of a controlled substance in an amount of four grams to 200 grams while the laboratory report showed the weight to be less than one gram. Mobley explained that when he booked Glenn, he mistakenly wrote down the wrong degree of the offense. At best, this evidence may show a possibility, or question, of alteration or tampering. As such, it does not affect the admissibility of the evidence. Thus, proof of the beginning and end of the chain of custody will support admission of the evidence.

At trial, the State showed that Mobley took the pill bottle and cocaine from Glenn and, after field testing, gave it to a detective so it could be sent to a laboratory for testing. At trial, Mobley positively identified the bottle and cocaine as the same items he had taken from Glenn. In

addition, he identified photographs of the bottle and its contents as photographs he had taken the evening of the arrest.

Officer Scott Beck, who was responsible for all the evidence going through the Marshall Police Department at the time, identified this same bottle and cocaine as the evidence seized by Mobley. He testified that he had taken it to the laboratory in Tyler to have it analyzed and that he picked it up when the analysis was finished. According to Beck, upon returning from Tyler, he placed the evidence in the evidence locker where it remained until it was brought to court. Beck also testified that it had not been altered or tampered with in any way. He identified the seal on the envelope containing the pill bottle and cocaine as an inventory seal placed on the envelope after confirming it was the same pill bottle and cocaine that was originally placed in the envelope.

Eloisa Esparza, a forensic scientist at the Texas Department of Public Safety Crime Laboratory in Tyler, identified the envelope containing the pill bottle and cocaine as the same envelope that contained the pill bottle and cocaine received by her. She identified the blue sticker and unique identification number placed on the envelope by the Tyler laboratory. She testified that the envelope was sealed when she received it and that she placed it in a secure, limited-access vault. The envelope was removed from the vault and opened to analyze the contents, the contents were then placed back in the envelope, and the envelope was resealed and placed back into the vault, where it remained until it was returned to the Marshall Police Department.

Based on the foregoing testimony, we find there is sufficient proof of the chain of custody. We note that the testimony is not as clear as it might have been and that there may be a gap between Mobley turning over the pill bottle and its contents to the unidentified detective and its receipt by

18

Beck.[12]  However, this gap, or theoretical gap, only goes to the weight of the evidence and does not affect the admissibility of the bottle and cocaine in the absence of evidence of tampering or commingling.  The jury had the pill bottle and its contents, as well as the photographs taken by Mobley on the evening of the arrest, and was able to compare the same to verify the accuracy of the State's evidence.  We overrule this point of error.

Based on the foregoing, we affirm the judgment of the trial court.


Ralph K. Burgess
Justice

Date Submitted:     June 22, 2015
Date Decided:       September 4, 2015

Publish

---

[12]The identity of this unnamed detective is unknown.  It might be Johnson, as Glenn claims, it might be Beck, or it might be a third, unnamed, officer.  It is also unclear when Mobley delivered the pill bottle and cocaine to the detective, whether at the scene or at the police station after booking Glenn.  Glenn did not question Mobley at trial regarding this detective's identity or the timing of the delivery to the detective.