**Opinion issued July 12, 2016**



In The

# Court of Appeals

For The

## First District of Texas

————————————

**NO. 01-15-00922-CR**

————————————

**BRANDON LEE SHELTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 185th District Court
Harris County, Texas
Trial Court Case No. 1426446

## MEMORANDUM OPINION

After the trial court denied his motion to suppress, Brandon Lee Shelton pleaded guilty to possession of four to 400 grams of ecstasy with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.103, –.113 (West 2010 & Supp. 2015). The trial court assessed his punishment at fourteen years' imprisonment.

Shelton appeals the denial of his motion to suppress. *See* TEX. R. APP. P. 25.2(a)(2). We affirm.

## Background

In the early morning hours of April 28, 2014, a silver Chrysler sedan passed Officer A. Romero of the Bellaire Police Department on the 610 Loop, where the speed limit is 60 miles per hour. Officer Romero noted that his radar registered 75 miles per hour and accelerated to catch up with the Chrysler and pull it over. The driver of the Chrysler pulled off on to the narrow shoulder of the freeway. The driver, later identified as Shelton, opened his door and started to get out of the Chrysler with his hands in the air. Officer Romero ordered him to get back in the car, and Shelton complied.

Officer Romero approached Shelton from the passenger side and asked him for his driver's license. Shelton had no driver's license, proof of insurance, or any type of picture identification with him. Because the car had New Jersey plates, the officer asked Shelton if he was visiting from New Jersey. Shelton stated that he was from Houston, but the car was purchased at an auction 3 weeks ago. Romero asked Shelton to step out of the car and stand away from freeway traffic. Romero patted him down for weapons. Shelton was not armed. Romero then asked Shelton for his name and date of birth, and Shelton identified himself as Brandon Shelton. Romero asked Shelton to wait on the shoulder and returned to his patrol

2

car to look up Shelton's information.  Romero also radioed for assistance from a backup unit.

The dash cam video shows Romero asking Shelton: "It's cool if we check your car real quick?"  Shelton responded: "Yes, sir." Romero then added that if "everything checks out clear with you man, I don't mind giving you a verbal warning for the speeding, alright, and next time watch your speeding alright?  Just hang tight with these officers, alright." Shelton's response is inaudible.[1]

During their search, the police officers found several types of pills in separate bags, encased in a larger bag in the center console of Shelton's car. Officer Romero read Shelton his Miranda rights, which Shelton waived.  Shelton admitted that the pills were ecstasy ("X") and Xanax ("handlebars").

Before trial, Shelton moved to suppress any evidence obtained by the search of his car, contending that Officer Romero had no basis for either the pat down or the search of Shelton's car, and Shelton's consent to the search was not valid.  At the hearing on the motion to suppress, the State presented Officer Romero's testimony.  Shelton introduced Officer Romero's dash cam video of the traffic stop.  The trial court found that Officer Romero's testimony was credible. It further found:

---

[1]     Shelton's responses are off camera and the trial court describes them as "difficult to hear," but observed in its findings that, in addition to the video, Officer Romero testified that Shelton consented to the search.

And in reviewing the video as well as the officer's testimony and his actions on the video, it appears that at the time the defendant had given him consent to search, although it's difficult to hear on the video, that at that point the officer went into the vehicle, searched and found that the center console a quantity of pills and the officer at that point read the defendant his Miranda warnings, the defendant waived his warnings and made several statements. The Court also finds that the fact that, even after being given his warnings, the defendant continued to cooperate with the police, goes also to show that the defendant freely and voluntarily consented to the search of his vehicle. And based on those facts and in review of the cases and having no evidence to show that the defendant did not freely and voluntarily consent to the search, the Court is going to deny the motion to suppress.

Shelton then pleaded guilty pursuant to a plea bargain with the State. The plea agreement was for twelve years' confinement, but was conditioned on Shelton's appearance for sentencing. The trial court accepted the plea. Shelton failed to appear for his sentencing hearing, however, whereupon the trial court sentenced Shelton to fourteen years' imprisonment.

## Discussion

Shelton complains that (1) Officer Romero was not justified in patting him down and detaining him; and (2) Shelton did not voluntarily consent to the search of his car because his consent was coerced. Shelton refers to the circumstances of his consent, in which he alleges he was backed against a concrete divider by several police officers and asked for consent in a deceptive manner. Shelton also contends that he consented because the police unreasonably prolonged the traffic stop and illegally searched his person.

4

## A. Standard of Review

We review a ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We review a trial court's factual findings for abuse of discretion and its application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We defer to a trial court's determination of historical facts, especially those based on an evaluation of a witness's credibility or demeanor. *Id.*; *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). We apply the same deference to the trial court's ruling on mixed questions of law and fact which rely on a witness's credibility or demeanor. *See Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).

If the trial court makes express findings of fact, we view the evidence in the light most favorable to its ruling and determine whether the evidence supports these factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010) (citing *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). When findings of fact are not entered, we "must view the evidence 'in the light most favorable to the trial court's ruling' and 'assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the

record.'" *See Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006) (quoting *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).

## B.  Analysis

### 1.  Detention and Pat Down

Shelton argues that the officer's initial pat down was not for weapons, but for drugs, noting that he asked Shelton whether he had "no guns, no weapons, *no drugs,* or anything like that?"  As such, he contends that the pat down does not pass constitutional muster.  *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884–85 (1968).

Shelton describes the evidence as limited to the fact that Shelton was speeding at night, and he argues that this is an insufficient basis for a protective pat down.  Shelton, however, had no driver's license, insurance card, or any other form of identification.  The car license plate was from New Jersey, but Shelton told the officer that he was from Houston.  Shelton appeared nervous and exited the car toward Officer Romero with his hands in the air before Officer Romero had stepped out of his car.  Officer Romero testified that this behavior is "out of the ordinary" and "not a typical way somebody reacts when you – they get pulled over."  These facts support the trial court's implied finding that Officer Romero had a reasonable basis for patting down Shelton when Shelton exited the car a second time and before he began to verify Shelton's identification.  At that point,

he was alone with Shelton, and had a limited view of Shelton in his car before he exited the second time. We hold that the trial court did not err in denying the motion to suppress on the basis that the pat-down was to ensure the officer's safety. *See Lemons v. State,* 135 S.W.3d 878, 884 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding pat down justified when officer was alone at night and had limited visibility of appellant in the car).[2]

On appeal, Shelton also challenges the length of the detention. The length of the detention on the dash cam video was about 19 minutes. Shelton argues that Officer Romero should have let him go immediately if he had decided to give Shelton a warning for speeding. But Shelton ignores the fact that he was not carrying a driver's license or insurance, which the trial court found required further investigation. *See Sims v. State*, 98 S.W.3d 292, 297 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that reasonable suspicion of other criminal activity arose after the defendant was stopped for a traffic violation). The trial court reasonably could have concluded that the time of detention was justified in furtherance of the officer's investigation into Shelton's identity. *See Vasquez v. State*, 324 S.W.3d 912, 920–21 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)

---

[2]    Shelton's counsel suggested on cross examination in the trial court that Officer Romero placed his hand inside Shelton's pocket during the pat down. The officer denied that this was the case; the video does not show that the officer placed his hands inside any of Shelton's pockets. Thus, the trial court did not err in denying the motion to suppress based on counsel's suggestion that Officer Romero searched Shelton's body.

7

(upholding search after defendant was initially stopped for speeding, when circumstances, including the way the defendant pulled off the road, his demeanor after the stop, and the officer's experience, supported a finding of reasonable suspicion to further detain the defendant).

Moreover, in the trial court, Shelton disavowed any challenge to the length of the detention, answering "No, no, Judge," when asked whether his generic motion to suppress included a challenge to the length of his detention. To preserve error for appeal, a party must timely raise the issue in the trial court with enough specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). A defendant who files a generic motion to suppress and fails to argue at the suppression hearing about the issue on appeal waives appellate review of that issue. *See Glenn v. State*, 475 S.W.3d 530, 534–35 (Tex. App.—Texarkana 2015, no pet.) (citing *Johnson v. State*, 263 S.W.3d 287, 290 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd)) ("'[S]hotgun' objections generally citing many grounds for the objection without argument preserve nothing for appeal."); *Johnson*, 263 S.W.3d at 290 (issue waived when not raised in generic motion to suppress or hearing on motion). We hold that any challenge to the length of the detention is waived.

## 2. Consent to Search

A voluntary consensual search is an exception to the probable cause and warrant requirements of the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). When challenged, the State has the burden to prove by clear and convincing evidence that a suspect freely and voluntarily gave his consent. *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997). We defer to the trial court for fact findings, and review de novo the legal question of whether consent was voluntary. *See Ross*, 32 S.W.3d at 856.

Consent must not be the product of duress or coercion, express or implied. *Reasor*, 12 S.W.3d at 817 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S. Ct. 2041, 2059 (1973)). Consent must be positive and unequivocal, not merely acquiescence to a claim of lawful authority. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (citing *Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S. Ct. 1788, 1792 (1968)). Among the factors to be considered in determining voluntariness include the youth, intelligence, or education of the person; the constitutional advice (e.g., *Miranda* warnings) given to the person; the length of the detention; the repetitiveness of the questioning; and the use of physical punishment. *Reasor*, 12 S.W.3d at 818; *Arroyo v. State*, 881 S.W.2d 784, 789 (Tex. App.—Houston [14th Dist.] 1994, no pet.).

Officer Romero testified that Shelton's quick exit from the vehicle after he was pulled over and his nervous behavior made Romero suspicious that Shelton had something to hide in the vehicle. After he discovered Shelton's prior criminal history while checking on Shelton's identification, the officer testified that the history, together with Shelton's behavior, prompted him to ask to search the vehicle.

Shelton relies on *Carmouche v. State* for his contention that his consent was not valid. 10 S.W.3d 323 (Tex. Crim. App. 2000). In that case, police officers pulled over a suspected drug trafficker for speeding and based on a tip that he was carrying drugs with him. *Id.* at 326. The officers frisked the suspect but found no narcotics. *Id.* at 327. When an informant reported that the suspect was carrying the drugs on his person, the officers asked the suspect for consent to search him again. *Id.* The court observed from a dashboard camera video that the suspect was sitting or leaning on the hood of his car, with one police officer standing directly in front of him and another police officer standing to his left. *Id.* One of the police officers ordered the suspect to "[t]urn around and put [his] hands on the car." *Id.* Once the suspect complied, the officer asked the suspect for consent to search as he reached for the suspect's crotch area, where he found the narcotics. *Id.* The Court of Criminal Appeals observed that the police officers had already frisked the suspect without his consent once, and that they did not request his consent to

search again until they had him surrounded and "spread-eagled" on the hood of his car and were already reaching for his crotch. *Id.* at 332. Because these circumstances could have led a reasonable person to believe that the second search was not optional, the court held that the suspect did not consent voluntarily. *Id.*

In contrast, in this case, the dash cam video shows that the police officers did not surround Shelton or physically restrain him in a corner in the way the officers did in *Carmouche*. The officers did not ask for Shelton's consent while he was in a vulnerable physical position. Finally, Romero did not begin the search of the vehicle until he had obtained Shelton's consent. The trial court found that Officer Romero's testimony was "reliable and credible." Based on Officer Romero's account and the video, the trial court did not err in finding that the State proved by clear and convincing evidence that Shelton's consent was voluntary. *See Turrubiate*, 399 S.W.3d at 150; *Ibarra*, 953 S.W.2d at 245.

Shelton further argues that when Romero asked, "It's cool if we check your car real quick?" and later stated that he would give Shelton a warning if the car "check[ed] out," Romero obscured the legal significance of his request for consent and coerced his consent. The Fourth Amendment, however, does not require the police to inform a suspect of his right to refuse to consent to a search. *Hutchins v. State*, 475 S.W.3d 496, 500–01 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) ("While the showing of a warning is of evidentiary value in determining whether a

11

valid consent was given, such a warning is not required or essential.") (citing *Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985)). Romero asked Shelton if he could search Shelton's car without promise of a warning for a speeding ticket. Officer Romero added after Shelton's reply to his request to search that "if everything check[ed] out," he would let Shelton go with a verbal warning. During this exchange, the other police officers stood next to Romero, and Shelton stood off camera on the shoulder of the highway. The evidence does not indicate that the officers physically intimidated Shelton or pinned him against a wall. Based on the evidence before it, the trial court reasonably could have concluded that the request for consent was not coerced by a promise to forgo writing Shelton a speeding ticket. We hold that the evidence adduced at the suppression hearing supports the trial court's determination that Shelton's consent was not coerced by deception or intimidation.

## Conclusion

The trial court did not err in denying Shelton's motion to suppress. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Higley, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).