

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00043-CR

_____

THE STATE OF TEXAS, Appellant

V.

TERRANCE SMITH, Appellee

On Appeal from the County Court at Law
Fannin County, Texas
Trial Court No. 49174

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# O P I N I O N

Terrance Smith knocked on the door of a residence, was refused entry, and then drove away. After the encounter was reported to the Bonham Police Department (BPD), Smith was pulled over and subsequently arrested for driving while intoxicated (DWI). Smith filed a motion to suppress all evidence obtained after the initial stop on the ground that the arresting officer could not reasonably conclude that he was, had been, or would be engaged in criminal activity. The trial court agreed. Now, the State of Texas appeals the trial court's order granting Smith's suppression motion. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West 2018); *State v. Medrano*, 67 S.W.3d 892, 894 (Tex. Crim. App. 2002). We affirm.

## I.     Factual and Procedural Background

At the suppression hearing, the State introduced the testimony of Joe Gentry, a patrol sergeant with the BPD who had reviewed the arresting officer's police report.[1] Gentry testified that, while he was on patrol on the evening of the incident, he received a notice from dispatch at 8:18 p.m. about "[a] subject beating on the door, banging on the door, and the woman refusing to let him in." The trial court heard that Gentry did not know the name of the woman who contacted 9-1-1 dispatchers or whether the "banging" at the door was loud. The woman, who lived at 112 North Main Street, reported that the person banging on the door was Smith and that Smith had left her residence in "[a] Mercedes pickup truck." She provided no description of Smith.

Gentry testified that the arresting officer stopped a silver Mercedes sports-utility vehicle (SUV) "[s]everal blocks from the residence" after discovering that the vehicle's license plate was

---

[1]The arresting officer did not testify at the suppression hearing.

registered to Smith. According to Gentry, Officer Richard Lundy, the arresting officer, had smelled alcohol during the stop and had seen open containers in the SUV. Gentry testified that Smith's blood alcohol level was in excess of the legal limit.

Bill Abbott, a narcotics investigator, provided backup to Lundy and testified that Smith smelled of alcohol. Abbott testified that he heard the dispatch and that the woman who called 9-1-1 had identified herself as Shamya Barnett. Abbott admitted that he recalled nothing to indicate that Smith was a threat to Barnett. Both Gentry and Lundy stated that they did not know whether Barnett was reliable. Aside from Gentry and Abbott's testimony, no other evidence was presented.

In granting Smith's suppression motion, the trial court concluded (1) that "no crime was alleged to have been committed by the Defendant when he was stopped and that no crime had been committed prior to his stop," (2) that "the information the officers had at the time of the stop could not objectively and reasonably lead [them] to believe a crime had occurred, was occurring, or would occur," and (3) that "the 911 caller did not establish a link between alleged crime and Defendant because the caller did not provide a physical description of the Defendant."[2] The State appeals.

## II. Standard of Review

"In a hearing on a motion to suppress evidence, a defendant bears the initial burden of proof to demonstrate that the search and seizure occurred without a warrant." *Hitchcock v. State*, 118 S.W.3d 844, 848 (Tex. App.—Texarkana 2003, pet. ref'd) (citing *Bishop v. State*, 85 S.W.3d

---

[2]In its findings of fact, the trial court determined that Barnett incorrectly described the vehicle's make and did not provide a physical description of Smith.

3

819, 821 (Tex. Crim. App. 2002)). Once the defendant demonstrates that a warrantless search occurred, the burden shifts to the State to prove that a warrant existed or that an exception, under either the Fourth Amendment to the United States Constitution or Article I, Section 9, of the Texas Constitution, justified the warrantless search given the totality of the circumstances. *State v. Steelman*, 93 S.W.3d 102, 106 n.5 (Tex. Crim. App. 2002); *Bishop*, 85 S.W.3d at 822; *Hitchcock*, 118 S.W.3d at 848. If clear and convincing proof satisfying the State's burden is not offered before the trial court, then the illegally obtained evidence may not be admitted at trial. *See State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997) (Mansfield, J., concurring); *Hitchcock*, 118 S.W.3d at 848. In the present case, the parties agree that the search in question was executed without a warrant. Consequently, the State was required to prove the existence of a valid exception to the Fourth Amendment.

"The job of an appellate court in cases such as the one before us is to review the decision of the lower court for an abuse of discretion." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). "We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *Id.* "We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* (citing *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). "We give almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts." *Id.* (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)).

4

## III. Analysis

"A detention is either good or bad at the moment it starts." *State v. Duran*, 396 S.W.3d 563, 569–70 (Tex. Crim. App. 2013). "A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts." *Peucker v. State*, 489 S.W.3d 592, 600 (Tex. App.—Texarkana 2016, pet. ref'd) (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). "In *Terry*, the Court adopted a two-part examination to determine the reasonableness of an investigative detention." *Id.* (citing *Terry*, 392 U.S. at 22). "The first part of the analysis is to determine whether the officer's action at its inception was reasonable." *Id.* (citing *Terry*, 392 U.S. at 16–17). Here, we are tasked with determining whether the trial court's ruling on this issue constituted an abuse of discretion.

An "officer must have specific, articulable facts that, when combined with rational inferences therefrom, lead him to reasonably conclude that a particular person actually is, has been, or soon will be, engaged in criminal activity." *Arguellez v. State*, 409 S.W.3d 657, 663 (Tex. Crim. App. 2013) (citing *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007)). "This standard is objective, thus there need be only an objective basis for the stop; the subjective intent of the officer is irrelevant." *Id.* (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "The detaining officer need not personally be aware of every fact that objectively supports a reasonable suspicion to detain; the cumulative information known to the cooperating officers at the time of the stop is to be considered in making the reasonable-suspicion determination." *Id.* "A 911 police dispatcher is ordinarily regarded as such a cooperating officer for purposes of making this determination." *Id.*

"[A]lthough the information provided need not lead to the conclusion that an identifiable penal-code offense has occurred, the information must still be sufficiently detailed and reliable to support the reasonable suspicion that criminal activity is about to occur." *Martinez v. State*, 348 S.W.3d 919, 926 (Tex. Crim. App. 2011). "[A]ctions in a series may each seem innocent enough in isolation. If, however, when examined in the context of the totality of the circumstances, they reasonably suggest recent or imminent criminal conduct, an investigative detention is justified." *Arguellez*, 409 S.W.3d at 663 (citing *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). "The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Arguellez*, 409 S.W.3d at 663 (quoting *Derichsweiler*, 348 S.W.3d at 914). At a minimum, however, "[t]he facts must show that an unusual activity occurred" and that "the unusual activity is related to a crime." *Martinez*, 348 S.W.3d at 925.

"The reasonable suspicion determination is made by considering the totality of the circumstances." *Arguellez*, 409 S.W.3d at 663 (quoting *Garcia*, 43 S.W.3d at 530). Here, the facts before the trial court included that (1) Terrance Smith "banged" on the door of a residence occupied by Shamya Barnett at 8:18 p.m., (2) Barnett denied Smith entry, (3) Smith did not threaten Barnett, (4) Smith left the residence in a silver Mercedes, and (5) Barnett called 9-1-1. There was no evidence of the duration of the banging, whether it was loud, or whether officers believed the activity to be suspicious for any other reason. There was also no evidence of how Barnett knew Smith.

At the suppression hearing, no traffic violation was reported, and the only articulated reason for stopping the SUV was Barnett's report that the person banging on her door left in a silver Mercedes pickup truck. Neither Gentry nor Abbott attempted to explain or suggest that it was reasonable for the arresting officer to believe, prior to the stop, that any criminal activity was afoot. Rather, the evidence indicated that they merely followed the directive to stop a silver Mercedes. From here, "we review de novo whether th[ese] facts are sufficient to give rise to reasonable suspicion." *Id*. "The ultimate question is whether the officer was in possession of specific, articulable facts that were sufficient to provide a basis for a finding of reasonable suspicion to stop appellant's vehicle." *Id.*

We conclude that there was an absence of clear and convincing proof satisfying the State's burden to justify its warrantless search. In the absence of additional evidence, we find that the trial court did not abuse its discretion in finding that the officers failed to develop reasonable suspicion to believe that Smith had engaged in criminal activity or was about to do so. Given the absence of evidence showing (1) the nature of Barnett and Smith's relationship, if any, (2) that Smith had threatened Barnett in any manner, or (3) that Smith would return to Barnett's home after he left, there "was no indication of crime being afoot." *See Arguellez*, 409 S.W.3d at 664. Because we find no abuse of discretion in the trial court's decision to grant Smith's suppression motion, we overrule the State's point of error. *See Dixon*, 206 S.W.3d at 590.

## IV.	Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:	July 23, 2018
Date Decided:	July 24, 2018

Publish