

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-24-00213-CR

---

THE STATE OF TEXAS, Appellant

V.

LLANDON JOHN ZORN, Appellee

---

On Appeal from the County Court at Law No. 1
Gregg County, Texas
Trial Court No. 2023-0141

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

The State charged Llandon John Zorn with driving while intoxicated (DWI). Zorn moved to suppress the evidence related to his arrest, including the results of his breath test, because the arresting officer did not have probable cause to arrest him for DWI. After an evidentiary hearing, the trial court agreed and granted Zorn's motion to suppress the evidence. The State appeals. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5). Because we find that the trial court did not err by granting Zorn's suppression motion, we affirm the trial court.

## I.      Standard of Review

"The Fourth Amendment to the Constitution of the United States guarantees that '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated.'" *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (alteration in original) (quoting U.S. CONST. amend. IV). "In a hearing on a motion to suppress evidence, a defendant bears the initial burden of proof to demonstrate that the search and seizure occurred without a warrant." *State v. Smith*, 555 S.W.3d 760, 763 (Tex. App.—Texarkana 2018, no pet.) (quoting *Hitchcock v. State*, 118 S.W.3d 844, 848 (Tex. App.—Texarkana 2003, pet. ref'd) (citing *Bishop v. State*, 85 S.W.3d 819, 821 (Tex. Crim. App. 2002))). Where such is demonstrated, "the burden shifts to the State to prove that a warrant existed or that an exception, under either the Fourth Amendment to the United States Constitution or Article I, Section 9, of the Texas Constitution, justified the warrantless search given the totality of the circumstances." *Id.* (citing *State v. Steelman*, 93 S.W.3d 102, 106 n.5 (Tex. Crim. App. 2002); *Bishop*, 85 S.W.3d at 822; *Hitchcock*, 118 S.W.3d at 848).

"If clear and convincing proof satisfying the State's burden is not offered before the trial court, then the illegally obtained evidence may not be admitted at trial." *Id.* (citing *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997) (Mansfield, J., concurring); *Hitchcock*, 118 S.W.3d at 848). Here, it is undisputed that Zorn's arrest was without a warrant. "Consequently, the State was required to prove the existence of a valid exception to the Fourth Amendment." *Id.*

"Under the Fourth Amendment, a warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause." *Amador*, 275 S.W.3d at 878 (citing *United States v. Watson*, 423 U.S. 411, 418 (1976)). Probable cause exists to justify a warrantless arrest "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Id.* (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer . . . ." *Id.* (citing *Beck*, 379 U.S. at 97). Accordingly, "it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.* (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "A finding of probable cause requires 'more than bare suspicion' but 'less than . . . would justify . . . conviction." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

"The job of an appellate court in cases such as the one before us is to review the decision of the lower court for an abuse of discretion." *Smith*, 555 S.W.3d at 763 (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). "The trial court is the sole factfinder at a suppression hearing, and it may believe or disbelieve all or any part of a witness's testimony."

3

*Amador*, 275 S.W.3d at 878 (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)). "Moreover, at a suppression hearing, the trial court, like any factfinder, may make reasonable inferences from the evidence presented." *Id.* (citing *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)).

As a result, "[w]e view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *Smith*, 555 S.W.3d at 763 (quoting *Dixon*, 206 S.W.3d at 590). "We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* (quoting *Dixon*, 206 S.W.3d at 590). "We give almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts." *Id.* (quoting *Dixon*, 206 S.W.3d at 590).

## II.     The Suppression Hearing

The evidence at the suppression hearing demonstrated that Leslie Sheridan, a police officer with the Longview Police Department (LPD), saw Zorn's vehicle leave the parking lot of the Electric Cowboy at 12:32 a.m. Sheridan clarified that he did not see Zorn exit the bar, that Sheridan did not know if and how long Zorn had been there, and that Zorn had his fog lights on in the "[f]airly well lit" parking lot. But, because Zorn was driving without headlights for "a very short period of time," Sheridan initiated a traffic stop.

Sheridan testified that there was nothing in the manner of Zorn's driving that indicated intoxication, but said there was an odor of alcohol in the vehicle and an open container of beer

4

on the center console. Zorn, who was 300 pounds, admitted he had consumed two beers that night and had eaten at Buffalo Wild Wings. The trial court found that that evidence permitted Sheridan to conduct a DWI investigation but that it was improperly conducted and did not show that Zorn was intoxicated.

Sheridan's encounter with Zorn was recorded on Sheridan's body camera. From that footage, the trial court determined that Zorn responded to Sheridan's questions appropriately and did not have slurred speech, which was contrary to Sheridan's testimony that Zorn had "slightly slurred speech."[1] Miguel Castillo, another LPD officer, arrived on the scene for backup. At trial, Sheridan admitted that he improperly conducted the Horizontal Gaze Nystagmus (HGN) test because "he had gone too fast" and had "rushed it." Sheridan asked Zorn to perform the walk and turn field-sobriety test, but Zorn said he did he not have good balance because he was morbidly obese and had sustained several football injuries to the head. Zorn's mother, who had arrived at the scene with Zorn's brother, told Sheridan that Zorn did "not have good fine motor skills."

As a result, Zorn asked for an alternative field-sobriety test. Even though the LPD field-sobriety check sheet provided alternative field-sobriety tests for people like Zorn who were at least fifty pounds overweight, Sheridan testified that he was not trained on the alternative tests.[2] Sheridan also admitted he had not read the National Highway Traffic Safety Administration manual. As a result, he failed to offer Zorn any alternative tests, but he called Castillo, who,

---

[1]The State argues in its brief that Sheridan saw Zorn swaying, but Sheridan's testimony at the hearing established that he did not see Zorn swaying. Sheridan also said that Zorn "was not falling over" and "did not appear to stumble around."

[2]Sheridan also did not consider himself an expert in standardized field-sobriety testing.

unlike Sheridan, was certified in Advanced Roadside Impaired Driving Enforcement tests. Castillo performed three alternative tests on Zorn, including the lack of convergence,[3] finger-to-nose,[4] and modified Romberg test.[5] Zorn performed the tests properly and, as a result, Castillo testified that he did not observe any cues of impairment during the tests.

Even though Castillo informed Sheridan of his observations of lack of intoxication, Sheridan had already determined that he was going to arrest Zorn. After Sheridan had decided to arrest Zorn, he performed a second HGN test, said he observed six of six cues of intoxication, and handcuffed Zorn. Even so, the body-camera footage showed that Sheridan did not spend the full required time to perform the second HGN test appropriately.

In its findings of fact, the trial court determined that Sheridan "lacked the knowledge and training to conduct a DWI investigation properly and therefore was not credible," while Castillo was properly trained and was credible. The trial court also noted that Sheridan said Zorn had slightly slurred speech but that Castillo expressly countered Sheridan's testimony and that slurred speech was not seen in either the body-camera footage or Sheridan's arrest report. The trial court also found that Sheridan admitted that he had already made up his mind to arrest Zorn before he performed the second HGN test, that the second test was improperly conducted too

---

[3]Castillo testified that the lack of convergence allows the officer to track a person's eyes while they look at the officer's finger as is makes small counterclockwise circles, comes to the tip of the nose, and draws back.

[4]Castillo testified that that test "entails [him] giving the verbal instructions to the test, which consists of putting [the subject's] feet together, put[ting] his hands to his side, and then in a motion, pointing his pointer finger straight out and his thumbs up, and stay[ing] in that position" with eyes closed while bringing the pointer finger of each hand to the nose three times.

[5]According to Castillo, the modified Romberg requires a person to look at the sky, place their hands at their side, and estimate when thirty seconds have elapsed.

fast, and that its results were unreliable. As a result, the trial court found that, at the time Sheridan decided to arrest Zorn, there was no probable cause to arrest him for DWI.

## III. Analysis

"A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts." *Id.* at 763 (quoting *Peucker v. State*, 489 S.W.3d 592, 600 (Tex. App.—Texarkana 2016, pet. ref'd) (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). Here, the trial court concluded that, while Zorn's detention for a DWI investigation was justified, his arrest was not. Accordingly, the question before us is whether Sheridan had sufficient information given the totality of the circumstances "to warrant a prudent man in believing that" Zorn was intoxicated. *See Amador*, 275 S.W.3d at 878.

Under the Texas Penal Code, the term "[i]ntoxicated" means, "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . or any other substance into the body; or . . . having an alcohol concentration of 0.08 or more." TEX. PENAL CODE ANN. § 49.01(2). Our independent review of Sheridan's body-camera footage confirms the trial court's finding that Zorn, who was courteous and compliant, did not have slurred speech.[6] As for the HGN test results, "HGN evidence is reliable, admissible scientific evidence . . . when performed by a police officer who is certified by the National Highway [Traffic] Safety Administration . . . and who applies the technique properly," but Sheridan admitted he was not familiar with the National Highway Traffic Safety Administration manual and that he performed

---

[6]The body-camera footage shows that the Electric Cowboy shared a parking lot with other open businesses since it was part of a strip mall.

the first test improperly. *McRae v. State*, 152 S.W.3d 739, 743 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (footnote omitted) (citing *Emerson v. State*, 880 S.W.2d 759, 768 (Tex. Crim. App. 1994)). Moreover, the body-camera footage confirmed the trial court's assessment that both HGN tests were administered improperly since they were conducted too quickly.

We also observed, as did the trial court, that Zorn fully responded to Sheridan's questions in an appropriate manner, followed each direction given by both Sheridan and Castillo, and did not sway. In short, the footage supports the trial court's conclusion that Sheridan objectively lacked probable cause that Zorn did not have the normal use of either his mental or physical faculties. *See State v. Evans*, 500 S.W.3d 528, 539 (Tex. App.—San Antonio 2016, no pet.). Instead, the footage shows that, at best, Sheridan had only bare suspicion of intoxication that did not amount to probable cause that Zorn had lost the normal use of his faculties. *See State v. Mosely*, 348 S.W.3d 435, 441 (Tex. App.—Austin 2011, pet. ref'd) (upholding the trial court's decision to suppress the evidence even though a driver who was in an accident smelled of alcohol, had bloodshot eyes, and admitted to drinking).

Even so, the State argues that "[t]he trial court's findings on Officer Sheridan's credibility should be regarded with skepticism" and that "this Court should discount the trial court's decision to supplant its determination about [Zorn]'s slurred speech . . . for that of Officer Sheridan," but these arguments belie the proper standard of review since the trial court is the sole fact-finder at a suppression hearing, and we defer to those findings. *See Amador*, 275 S.W.3d at 878.

Because the State failed to establish that Zorn had lost the normal use of his faculties, we affirm the trial court's decision that Sheridan did not have probable cause to arrest him. As a result, the State failed to prove that Zorn's warrantless arrest was justified. We overrule the State's sole point of error.

## IV. Conclusion

We affirm the trial court's decision to grant Zorn's suppression motion.


Charles van Cleef
Justice

Date Submitted:     May 28, 2025
Date Decided:       June 12, 2025

Do Not Publish